JOHN SANBORN, Relator, vs. COMMISSIONERS OF RICE COUNTY, Respondents.

### APPLICATION FOR WRIT OF MANDAMUS.

The power of the Legislature, unrestrained by Constitutional limitation, is absolute in the imposition and apportionment of taxes.

*Section* 1, *Article nine*, *of the Constitution*, lays down a general rule for the levying of all taxes, and requires that *equality* shall be aimed at in every law imposing a tax.

A tax cannot be imposed exclusively on any subdivision of the State to pay an indebtedness or claim which is not peculiarly the debt of such subdivision, or to raise money for any purpose not peculiarly for the benefit of such subdivision.

Section one of an Act approved March 3, 1864, (*Laws of* 1864, *p.* 370,) required the Board of County Commissioners of Rice County to meet, and audit, adjust and fix the claim of John Sanborn *et al*, against School district No. 10 of

said county. Section three of said act provided that the amount of such claim, as audited, adjusted and fixed by said Board, should be entered on the records of the Board of County Commissioners, and that the Board should vote a tax upon the taxable property of the district for the amount of the claims.  *Held:*— That this was an attempt on the part of the Legislature to confer judicial power on said County Commissioners, and therefore in contravention of the Constitution.  That in pursuance of such act the plaintiff could not legally establish such claim or debt against said School District.  That the establishment of the claim was a condition precedent to the imposition of the tax, and therefore said Commissioners could not legally levy or collect said tax.

Points and authorities of Counsel for Relator.

I. It is competent for this Court to grant the relief sought by the Relator.  *Com. Stat. p.* 475, *sec.* 5; also *p.* 632, *secs.* 4–8; 2 *Minn.*, 343.

II. The writ asked for in this motion is the proper remedy.— Because,

First—If the law be with this application, (there being no issue of fact,) it is apparent that no valid excuse can be given for the non-performance of the acts demanded of the Commissioners.— *Com. Stat., p.* 632, *sec.* 7; 7 *Cowen,* 524; 4 *Abbott's Pr. R.,* 36; 14 *Johnson,* 325; *Crarey's N. Y. Prac.,* 286.

Second—It is not sought to control judicial discretion, but to compel the Commissioners to discharge a specific duty imposed upon them by statute.  *See Act;* 12 *How. Pr. Rep.* 224; 20 *Barb.,* 294; *Crarey's Special Proceedings,* 273.   3 *Hill.,* 612.

Third—The Relator has a clear legal right to relief, but no other appropriate legal remedy to which he can resort for the enforcement of that right.   1 *Cowen,* 417; *R. Stat. p.* 632, *sec.* 5.

Fourth—It is sought to enforce a substantial and valuable right which may be endangered by delay.   14 *Johnson,* 325;  *Crarey's Pr., (Sp. Proceedings,)* 286; *Id.,* 301, *and cases there cited.*

III. The provisons of the act of of March 3d, 1864, imperatively prescribing the duties of the Commissioners of Rice county, and which duties the Relator herein seeks to compel them to discharge, are not repugnant to our Constitution, but are in harmony with its spirit.  4 *Comstock, (N. Y.)* 419; 3 *Kernan,* (13 *N. Y.*) 143; 11 *Abbott's Pr. Rep.* 114; 12 *Id.,* 73, *sec.* 9; 24 *Wend.* 65.

Sanborn v. Commissioners of Rice County.

Points and authorities of Appellant.

I.—The act entitled " an act relating to certain claims against School District No. 10, of Rice county," approved March 3, 1864, is unconstitutional and void for the following reasons :

1. It is the exercise of judicial powers by the Legislature. *Art. 3, sec. 1, Con. of Minn. ; Smith on Constitutional Construction,* 347 ; 3 *Scammon*, 242.

2. It deprives the party of property, without due process of law.   16 *Mass.*, 84 ; 37 *Maine*, 163.

3. It is. an attempt to vest judicial powers in the county commissioners, in violation of *sec.* 9, *Art.* 6 *of the Constitution*, and *sec.* 1 of the same article.   6 *Minn.*, 183.

4. It deprives the party of the constitutional right of trial by jury.

5. It takes the private property of one man and transfers it to another, and this without any provision for compensation.

6. It is not valid, as the exercise of the taxing power, because it violates the constitutional rule of taxation.   *Sec.* 1 *and* 2, *Art. 9, Constitution.*

7. If the Legislature assumes the existence of an indebtedness by the district, this is judicial legislation.    If they do not but appoint a board to decide whether such indebtedness exists, the acts of such board are illegal and without authority, upon the principles already stated, the school district being a corporation, and as such entitled to the same rights with respect to property as other corporations or individuals. 8*th Minn.*, 372 ; 3 *Ohio State Reps.*, 1; 5*th Pike (Ark.)* 204.

Generally delegated power cannot be delegated. 1 *Yerger*, 452; 9 *Yerger*, 490.

8. But assuming that the Legislature might properly determine the existence of an indebtedness, and that they have delegated no portion of the taxing power to the county commissioners, but are simply acting through them as public agents, still, under our Constitution, they have no power by a special enactment to violate

the constitutional rule of equality, by prescribing a novel and different rule for the payment of debts and the mode of taxation in our school districts from that prevailing elsewhere throughout the State.   4 *N. H.*, 565, 572.

LOWELL & MOTT, Counsel for Relator.

COLE & CASE, Counsel for Commissioners.

*By the Court*—WILSON, J.—It is unquestionably the province of the Legislature to levy and apportion taxes.   The judiciary can only interfere in such cases where some clause of the Constitution is violated.

The question, whether a law is void for its repugnancy to the Constitution, is at all times one of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case.

To justify such decision, the opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.

This is especially so in this class of cases, where the object sought—equality of taxation—cannot be attained, but only approximated to, and when many objections may be urged to every law, no matter how well conceived or wisely framed, and, I may add further, when the legislative branch of the government is pre-eminently qualified to judge of the means best adapted to the accomplishment of the end sought.

But when the law is clearly in contravention of the Constitution, a judge cannot hesitate to so decide without being unmindful of the solemn obligations of his position.

We must also bear in mind that constitutions necessarily deal in general language, and in their interpretation words are to be understood in the sense in which they are generally used by those for whom the instrument was intended.

In the decision of this case, while we seek to apply, we shall endeavor to be governed, by these salutary rules of interpretation.

The general question submitted to our decision, is whether the law of 1864, under which the Defendants were required to proceed, is in contravention of any of the provisions of our State Constitution.

*Sec.* 1, *Art.* 9, *of the Constitution,* requires that " all taxes to be raised in this State shall be as nearly equal as may be," &c. Here is a general rule laid down for the levying of all taxes. *Stinson vs. Smith,* 8th *Minn.,* 372.

The language is, perhaps, not as specific as might be desired; but constitutions are not, and in the nature of things cannot, be specific.

Their office is to distribute the powers of government, and to define the boundaries, and lay down general rules for the government of the different departments.

Whatever difficulty there may be in the application of this rule, in some cases, we think it with sufficient clearness enunciates a principle of taxation that is easily understood and applied in the case under consideration.

*Equality,* as nearly as may be, *must be aimed at* in every law imposing a tax. The course to be pursued, and the means to be used *in pursuance of this rule,* are necessarily left in the discretion of the Legislature, and according to the rule of interpretation above laid down, the infraction of the Constitution must be palpable before the courts will declare the law unconstitutional.

A *substantial* compliance with this rule by the Legislature is therefore all that can be required, but they must, in no case, run counter to it or disregard it.

By way of illustration, let us suppose that the Legislature, as a gratuity, proposed to give to John Doe $1,000, and, for the purpose of raising the amount, imposed a tax on some school district in the State.

The *necessary inequality* of the tax, and, therefore, the unconstitutionality of the law, would be patent at first sight.

The law itself would be incontrovertible evidence that equality

36—vol. ix.

of taxation was not in that instance *aimed at* by the Legislature.

The gift being a State bounty, each locality is presumed to have been equally interested in and benefitted by it, and the burden consequent thereon should have been a State burden.

From the constitutional restrictions above cited, we think this general rule is clearly deducible—that a tax cannot be imposed exclusively on any subdivision of the State, to pay an indebtedness or claim which is not peculiarly the debt of such subdivision, or to raise money for any purpose not peculiarly for the benefit of such subdivision.

In the application of this general rule to the case under consideration, we have to inquire whether there has been established any valid claim or debt against said school district, in favor of the Plaintiff, or rather whether, in pursuance of the provisions of the aforesaid act, the Plaintiff *could legally establish* any such claim or debt.

In the examination of this point, also, we have to consider the limitations imposed by our State Constitution on the action of the Legislature.

Our State Constitution, like the Constitution of (we believe) every other State in the Union, divides the attributes of government into three great branches, the executive, the legislative and the judicial, and declares that no person belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others, except in instances expressly provided in the Constitution.

It is not necessary for us on this occasion to particularise the cases thus expressly excepted, because none of them have any bearing upon the point to be decided in this case.

Thus, each department of government is strictly confined within its appropriate sphere, and an attempt *to exercise any power properly belonging to either of the other departments*, is not only unauthorized, but positively forbidden.

And while the Legislature is thus expressly precluded from exercising any judicial power itself, it cannot authorize the commissioners of Rice county, or any other persons, to exercise such

power, because the judicial power of the State is vested by the Constitution *exclusively* in the *Courts.* If, therefore, the powers conferred, or attempted to be conferred, on the commissioners of Rice county, by said act of the Legislature, are in their nature judicial, if they are powers not "*properly belonging to*" the legislative, but to the judicial department of the government, then the act is in contravention of the Constitution, and void.

If the Plaintiff has not a valid or legal *claim* against said school district, the amount awarded him would be merely a gift or gratuity, and could not, as we have above shown, be legally raised by a tax levied exclusively on said school district.

If he has a valid claim or demand against it, he can collect it under the general law, and this special act is a mere suspension of the general law in his favor, *pro hac vice.* This cannot be done. It is not within the bounds of legitimate legislation to enact a special law, dispensing with the general law in a particular case, and granting a privilege and indulgence to one man, by way of exemption from the effect and operation of such general law, leaving all other persons under its operation. *Lewis vs. Webb,* 3 *Greenleaf,* 326; *Durham vs. Lewiston,* 4 *Greenleaf,* 140; *Holden vs. James,* 11 *Mass.,* 396; *Sedgwick on Con. Law,* 166-7; *Ib.* 177; *Piyurt, Appellant,* 5 *Pick.,* 65.

This in no respect partakes of the characteristics of a law; it is a mere attempt to determine a private controversy, which the Legislature has not jurisdiction to do. *Sedgwick on Con. Law,* 166-7; *Parmalee vs. Thompson,* 7 *Hill,* 77.

It is not a "*rule* of conduct," but a transient, sudden order, concerning a particular person. It is not "*permanent, uniform and universal*;" its operation is spent on the Plaintiff only. It is in form a law, in effect a decree. 1 *Black. Com.,* 44-5; *Lewis vs. Webb,* 3 *Greenl.,* 326; *Durham vs. Lewiston,* 4 *Greenl.,* 140; *Holden vs. James,* 11 *Mass.,* 396; *Smith's Com. on Con. Law,* 500-1; *Ib.,* 503-4; *Jones vs. Perry,* 10 *Yerger Reps.,* 59; *Sedgwick on Con. Law,* 166-7; *Ib.,* 169, 172; *Ib.* 177; *Parmalee vs. Thompson,* 7 *Hill,* 77; *Piyurt, Appellant,* 5 *Pick,* 65.

We think there is in no sense an exercise of legislative power.

Is it an attempt to exercise judicial power ?   The mere state-
ment of the facts would seem to conclusively [answer this ques-
tion in the affirmative.   To " *audit, adjust and fix the claims* "
of A. against B., is the ordinary and appropriat duty of courts of
justice in every civil action for damages ; it is a duty purely judi-
cial in its nature and consequences.

Our Statute defines a judgment to be " the final determination
of the rights of the parties to the action."   The decision of the
defendants in this case would not have been a " judgment " tech-
nically, because not a proceeding in a court of justice; but it
would have been a final determination of the rights of the parties
to the controversy, (had the legality of the proceedings been
recognized.)

No appeal was provided for or contemplated.   If this was in
substance a decree, the form in which the Legislature thought fit
to clothe it could not alter its character.

Thus far we have not adverted to the authorities referred to by
the plaintiff's counsel.   We will now for a moment examine
them.   The cases principally relied on are, *People vs. Mayor, &c.
of Brooklyn,* 4 *Com.,* 419, and *Town of Guilford vs. Board of
Supervisors of Chenango Co.,* 13 *N. Y.,* 143.

But one question was involved in the first mentioned case, sup-
posed to have any bearing on the case now under consideration,
and in the decision of that point the Court held the following lan-
guage :

" It must be concluded that the power of taxation and of ap-
portioning taxation, or of assigning to each individual his share of
the burthen, is vested exclusively in the Legislature unless the
power is limited or restrained by some constitutional provision. The
power of taxing and the power of apportioning taxation are iden-
tical and inseparable.   Taxes cannot be laid without apportion-
ment, and the power of apportionment is therefore unlimited, un-
less it be restrained as a part of the power of taxation.   There is
not, and since the organization of the government there has not
been, any such constitutional limitation or restraint."

In the other case above referred to, (13 *N. Y.,* 143,) the Court

decide that, "The Legislature of the State has power to levy a tax upon the taxable property of a town and appropriate the same to the payment of a claim, made by an individual against the town, whether the claim is recoverable by action or not." Opinions were delivered in this case by two of the Judges, Dean and Denio.

Judge Dean decides that there being no constitutional limitation of the absolute power of the Legislature, it may appropriate public moneys for local or private purposes, and impose a tax on the whole or any portion of the State.

Judge Denio, in the opinion by him delivered, used the following language:

"The Legislature is not confined in its appropriation of the public moneys or of the sums to be raised by taxation in favor of individuals to cases in which a legal demand exists against the State. It can thus recognize claims founded in equity and justice, in the largest sense of these terms, or in gratitude or charity. Independently of express constitutional restrictions it can make appropriations of money whenever the public well being requires or will be promoted by it, and it is the judge of what is for the public good."

It will be observed that in neither of these cases does the decision conflict with the views entertained in this case.

We readily admit, that the power of the Legislature, unrestrained by constitutional limitation, is absolute in the imposition and apportionment of taxes, and this is all these cases decide.

The requirements of our Constitution as to equality of taxation are not found in that of New York, hence the inapplicability of these cases.

Another objection urged to the conclusion at which we have arrived in this case is, that the proceedings authorized are against said School District as a quasi-corporation, and therefore the same rules do not apply that would be applicable in case of a demand made against a natural person—that claims of persons against such corporations are frequently and ordinarily audited and allowed by some officer thereof without any ap-

peal to or right of action in the Courts—that the Legislature, by the appointment of the Commissioners of Rice County to audit and fix the claim of Plaintiff, made them *ipso facto* the officers of said quasi-corporation *pro hac vice*, with full authority to legally and finally determine the amount of plaintiff's demand.

To these conclusions and this reasoning there seem to be many objections.

1. The language of the act does not justify such conclusion.

2. The proceedings authorized by said special act of the Legislature were not against the school district as a quasi-corporation; they were not aimed at and could not affect either its corporate rights or corporate property.

The act of the Commissioners in fixing the amount due was only intended as preliminary and auxilliary to the taxation of the *individual* property of the taxpayers of the District.

3. It is true that in some States the law makes the Board of Supervisors in each county a board of arbitration, to which all parties having claims must submit such claims for examination, audit and allowance, and no appeal from the decision of the board is allowed.

But such laws are sustained by the Courts on the ground that the parties are presumed to have known the law and *to have contracted with reference to it :* in other words the law is held *to have been in effect incoporated into the contract.* *Brady vs. Supervisors of N. Y.,* 2 *Sandf.,* 460; *same case,* 6 *Selden,* 260.

Such presumption of course cannot be entertained where the law is enacted after the claim accrued.

4. We have a general law providing for the collection of claims of this character, (if the Plaintiff has any valid claim,) and this being the case, the Legislature has no authority to suspend its operation in a particular case in favor of an individual. *See authorities cited to this point above.*

We conclude therefore, (1.) That this act was an attempt by the Legislature to confer judicial power on said Commissioners, and

therefore unauthorized by the Constitution, and that the plaintiff could not establish any valid claim against said school district by any proceedings under said act.

(2.) The establishment of a valid claim in favor of the plaintiff against the district being a condition precedent to the imposition of the tax, no such tax could legally be imposed.

The Mandamus is denied.

