Ford v. The Town of North Des Moines.

FORD v. THE TOWN OF NORTH DES MOINES *et al.*

WESTON *et al.* v. THE SAME.

FRANZ *et al.* v. THE SAME.

SMITH & CO. v. FORD.

THE SAME v. WESTON.

THE SAME v. MARKHAM.

THE SAME v. KENNEDY.

THE SAME v. YEOMANS.

THE SAME v. MOGELBERG & FRANZ.

1. Cities and Towns: INCORPORATION AND EXTENSION: CONSTITU-
TIONALITY OF STATUTES: DELEGATION OF LEGISLATIVE POWERS.
If by chapter 10 of the Code, from section 421 to section 429,
inclusive, in relation to the incorporation of cities and towns, and
the annexation of territory thereto, any legislative authority is
delegated to the district court (which is questioned, since the court
is invested with no discretion, judicial or otherwise), still that
statute, and others with a like purpose, cannot be held to be
unconstitutional on that ground; for the constitution itself pro-
vides that the general assembly shall not pass local or special
laws for the incorporation of cities and towns (sec. 30, art. 3), and
that no corporation shall be created by special laws, but that it
shall provide by general laws for the organization of all corpora-
tions hereafter to be created. (Sec. 1, art. 8. See opinion for
citations.)

2. ——: ——: ——: NOTICE OF PROCEEDINGS IN COURT. Nor
are such statutes unconstitutional on the ground that no provision
is made therein for notice of the proceedings in the district court
to be given to persons owning property in the territory to be
affected by the proceedings; because the court has no discretion
in the matter,—the decision of the question of incorporation or
annexation being decided by the vote of the people. In such case
notice of the application to the court to appoint commissioners is
not a jurisdictional matter. (Compare *Dishon v. Smith,* 10 Iowa,
212.)

Ford v. The Town of North Des Moines.

3. ——— : ——— : RECORD OF PROCEEDINGS : NOTICE OF ELECTION. In proceedings in the district court for the incorporation of a town, or the annexation of territory thereto, under sections 421 to 429, inclusive, of the Code, it is not required that the notice of election be made of record. It is sufficient if the record shows that notice was duly given.

4. ——— : ——— : FILING UNAUTHENTICATED COPIES OF PROCEEDINGS. Where all the proceedings relating to the annexation of territory to an incorporated town are regular, and the town has assumed unquestioned jurisdiction of the territory, the annexation is not invalidated by the fact that the copies of the proceedings filed in the office of the county recorder, and of the secretary of state, as required by section 428 of the Code, are not certified to be correct copies ; especially where the proper certificates are supplied, even after the sufficiency of the annexation is called in question by actions commenced.

5. ——— : UNREASONABLE EXTENSION OF TERRITORY. The extension of the limits of a town, otherwise reasonable, cannot be objected to as unreasonable, on the ground that it includes, and subjects to taxation for municipal purposes, land lying along a river, and subject to overflow.

6. ——— : PAVING STREETS : BRIBERY : WHAT IS NOT. The fact that the members of a town council were induced to enter into a contract for the paving of a street, by the agreement of responsible parties owning land beyond the town limits, that they would grade the street at their own expense, is no evidence of bribery or official corruption. ( See opinion for citations.)

7. ——— : TAXES FOR PAVING : NOTICE OF ASSESSMENT TO TAXPAYERS. The levy of a tax upon the owners of abutting property for paving a city street is invalid unless they have notice thereof and an opportunity to be heard (*Gatch v. City of Des Moines*, 63 Iowa, 718) ; but where the amount can be ascertained by a mere mathematical calculation, and where no judgment and discretion are required to be exercised by the authorities, no notice is required. (*Amery v. City of Keokuk*, 72 Iowa, 701.) But it is not necessary that the statute authorizing such assessment provide for the notice. That may be done by an ordinance of the city, and notice given according to such ordinance is sufficient. ( See *Gatch v. City of Des Moines, supra.*)

8. ——— : ——— : STREET NOT A LEGAL HIGHWAY. Sixth street in the city of Des Moines extended to the Des Moines river. A bridge company built a bridge over the river at that point, and plaintiff 's grantor, who then owned the land on the other side of the river, conveyed a right of way, sixty-six feet wide, through the land, to the bridge company. This company sold and conveyed the bridge to the county. The right of way through the

land became a public highway, an extension of Sixth street, and a part of the town of North Des Moines, which ordered it to be paved. *Held* that plaintiff could not be heard to assert the invalidity of the order on the ground that the street was not a public highway.

9. ―――: ―――: RESISTANCE: ESTOPPEL. Where a party purchases land abutting upon a city street, after the city has ordered it to be paved, and after the grading is wholly, and the paving partly, completed, he cannot be heard to complain of. the assessment made upon his property to pay for the paving.

*Appeal from · Polk District Court.*—HON.. JOSIAH
GIVEN, Judge.

FILED, MAY 22, 1890.

ON the twenty-third day of May, 1887, the incorporated town of North Des Moines · by its council adopted a resolution by which it was determined that what was known as "Sixth street" in said town, from the north end of Sixth-street bridge, should be graded, curbed and paved. In pursuance of this resolution, the paving of said street was awarded to J. B. Smith & Co., as contractors. The street was paved with cedar blocks, and it is claimed by said incorporated town and by said J. B. Smith & Co. that the abutting property, and the owners thereof, should be charged with the payment of said improvement. This is the ultimate question to be determined in all of the above cases. The appellants in all of the cases are owners of abutting property. In the first three cases the owners therein named seek to restrain and enjoin the assessments made upon their lands. In the other cases the said J. B. Smith & Co. seek to foreclose certain certificates issued to them by the town for the paving, and the defendants thereto are the owners of the abutting property. The district court held that the assessments made for the pavement were valid obligations, and rendered judgments and decrees accordingly. The owners of the abutting property appeal.

*Cole, McVey & Clark* and *James M. & Geo. E. McCaughan*, for appellants.

*Gatch, Connor & Weaver* and *Phillips & Day*, for the Town of North Des Moines.

*Cummins & Wright*, for J. B. Smith & Co.

ROTHROCK, C. J.—I. The town of North Des Moines was organized as a municipal corporation in the year 1880. In the year 1886 certain proceedings were had for the purpose of extending the limits of the incorporation. The paving which is in controversy was laid upon that part of the territory which was annexed to the town by the extended limits. A great many questions are presented in the appellants' arguments, which involve the validity of the proceedings for extending the limits, as well as the action of the town council in the matter of ordering the street to be paved, and assessing the cost thereof against the owners of the abutting lands and lots. The annexation of the additional territory was made under chapter 10 of the Code, from section 421 to section 429, inclusive. It is unnecessary to set out these sections of the law in full. It is sufficient to say that it is therein provided, in substance, that, whenever the inhabitants of any part of any county not embraced in any incorporated city or town shall desire to be organized into a city or town, they may apply to the district court by petition in writing, signed by not less than twenty-five of the qualified electors of the territory to be embraced in the proposed incorporation, and that when such petition is presented the court shall forthwith appoint five commissioners, who shall call an election of the voters residing within the said territory, of which election notice shall be given by publication in a newspaper published within said territory, if any there be, and by posting notices of the election; and, if a majority of

*1. CITIES and towns: incorporation and extension: constitutionality of statutes: delegation of legislative powers.*

the ballots cast at said election be in favor of such incorporation, the clerk of said court shall give notice of the result, and a certified copy of all of the papers and record entries shall be filed in the recorder's office of the county and in the office of the secretary of state, and when such copies are filed, and officers are elected and qualified for such city or town, the incorporation shall be complete. These are the proceedings necessary to be taken to form an original incorporation. It is further provided that, when the inhabitants of part of any county adjoining any city or town shall desire to be annexed to such city or town, they may apply by petition in writing to the district court of the proper county, signed by not less than a majority of the electors residing within the territory proposed to be annexed; and that like proceedings shall be had on such petition as are prescribed for the organization of an incorporated town or city, so far as applicable.

It is claimed in behalf of appellants that the sections of the Code above referred to are unconstitutional and void. If this view be correct, then both the original incorporation of the town of North Des Moines and the annexation proceedings are invalid and void. The ground of the argument is that the creation of a municipal corporation is an exercise ef legislative power, and that such power cannot be delegated to the courts. Upon the general proposition that exclusive legislative power cannot be delegated to courts or to any other authority, there can be no dispute. It is for the general assembly alone to exercise purely legislative power. *Santo v. State*, 2 Iowa, 165; *State v. Beneke*, 9 Iowa, 203; *Weir v. Cram*, 37 Iowa, 649; *People v. Carpenter*, 24 N. Y. 86; *People v. Nevada*, 6 Cal. 143; *Galesburg v. Hawkinson*, 75 Ill. 156; *Sanborn v. Commissioners*, 9 Minn. 273 ( Gil. 258 ). But section 30 of article 3 of the constitution of the state provides that "the general assembly shall not pass local or special laws in the following cases:  *  *  *  For incorporation of cities and towns." And section 1 of article 8 provides that "no

corporation shall be created by special laws, but the general assembly shall provide by general laws for the organization of all corporations hereafter to be created, except as hereinafter provided." In obedience to these provisions of the constitution, no municipal corporation has been organized under a special charter by any act of the legislature since the adoption of the constitution, and many of those which were organized before that have since abandoned their special charters, and incorporated under the general law; so that there are now but three or four cities in the state acting under special charters.

By an act of the Seventh General Assembly, passed in 1858, municipal corporations were required to be organized by proceedings in the county court, in some respects similar to the proceedings now required to be had in the district court. That act, and laws of a similar nature, have been in force more than thirty years, and in numerous cases in this court their validity has been recognized; and we may say further, that, of the authorities cited by counsel on the question now under consideration, we think that the case of *Shumway v. Bennett*, 29 Mich. 451, is the only one which supports the claim made by counsel; and it is provided by section 1 of article 15 of the constitution of Michigan that "corporations may be formed under general laws, but shall not be created by special act except for municipal purposes."

If the legislature of this state may not by general laws prescribe rules and regulations for the organization of municipal corporations, and provide means for carrying the laws into effect by conferring upon some court or commission or board, or some other agency, the authority to ascertain and determine when the general provisions of the law are complied with, so as to effect the organization of the corporation, then no municipal corporation can be created. And it may well be questioned whether, under the present law, any legislative or even judicial power is conferred upon the district

court. When a petition has been presented, signed by not less than a majority of the electors residing within the territory proposed to be annexed, the court has no discretion, judicial or otherwise. The statute requires that in such case "the court shall forthwith appoint five commissioners," who shall call an election, and, when the election has been held, the result determines the question. This is not a question for the court. The court has the authority to appoint the commissioners of election, and nothing more. The question of incorporation or annexation, as the case may be, is determined by the electors.

In our opinion, the objection that the statute under consideration is unconstitutional cannot be sustained. The following authorities appear to us to sustain the views above expressed: 1 Dill. Mun. Corp., sec. 41; *Kayser v. Trustees*, 16 Mo. 88; *Commonwealth v. Judges*, 8 Pa. St. 391; *People v. Fleming*, 16 Pac. Rep. 298; *City of Burlington v. Leebrick*, 43 Iowa, 252; *City of Wahoo v. Dickinson*, 23 Neb. 426.

II. It is next claimed that the sections of the Code above cited are unconstitutional, because no provision

2. ——: ——: is made therein for notice of the proceed-
——: notice of ings in the district court to the persons
proceedings in court. owning property in the territory proposed
to be organized into a corporation, or in the territory sought to be annexed to an existing municipal corporation. It is said by counsel in argument that the creation of a municipality, or an extension of the boundaries of one already created, constitutes one step towards subjecting the persons and property within the corporate limits, original or extended, to additional burdens, charges, liabilities and duties, as well as the right to special privileges and immunities, and that "it inheres in, and is essentially a part of, every judicial proceeding; that it is to be had upon notice of some kind to the parties to be affected by it." The proposition last above stated is undoubtedly correct as an abstract principle of law, but we think it has no application to the

proceeding under consideration. As we have said, the court has no discretion. It has no power to determine the question of the propriety of organizing the municipality, or annexing territory to one already organized. The question of organization or annexation is determined by the electors of the territory, at an election called by the commissioners appointed by the court. In *Dishon v. Smith*, 10 Iowa, 212, which was a proceeding to determine the legality of the steps taken for the removal of a county-seat, it was held that the failure to give notice of the presentation of a petition for an election was not jurisdictional. The court said : " It is an error to regard this as a jurisdictional matter. This idea pertains to cases where the court acts judicially, and in matters between party and party, and not to one * * * which is a vote of the people." If the failure to give a notice, which is required by statute, is not jurisdictional, surely a statute which does not provide for notice ought not to be held to be unconstitutional.

III. It is further urged that there are certain defects in the proceedings for annexation which are fatal to the validity thereof. One of these alleged defects is that it does not appear that a majority of the electors residing within the territory proposed to be annexed signed the petition for annexation. This objection does not appear to us to be sustained by the record. It was recited in the order appointing the commissioners that a majority of the legal voters had signed the petition, and the record further shows that this recital was based upon proper proof of that fact.

IV. The record does not contain the notices of the election. This is claimed to be a fatal defect. The statute does not require that the notices of election shall be made of record. The commissioners, in their report to the court, stated that they "held an election, participated in by the electors of said territory, after due and legal notice thereof being given as by law required;"

3. ——: ——: record of proceedings: notice of election.

and the evidence shows that the notices were served in substantial compliance with the law.

V.　It appears that, before the paving in controversy was ordered, copies of the annexation proceedings were filed in the office of the county recorder and the office of the secretary of state, as required by section 428 of the Code. But they were not 'certified as correct copies of the annexation proceedings. This appears to us to be the only real defect in the whole proceedings. But we regard it as a mere defect, and not in any manner affecting the validity of the annexation. The proper copies were actually filed.. The town of North Des Moines assumed jurisdiction over the annexed territory without question or objection. The territory annexed was in fact a part of the town, and the only defect was the absence of the certificate or 'evidence of the correctness of the copies filed in the office of the recorder. After these actions were commenced, the proper certificates were filed, the proof of the correctness of the copies was supplied, and what appears to us to have been a technical defect was cured.

*4. ——: ——: filing unauthenticated copies of proceedings.*

VI.　It is claimed that the boundaries of the territory annexed show an unreasonable extension of the city limits, and make the subjecting of the property to taxation for abutting streets unconstitutional. It appears that the Des Moines river runs through 'the territory annexed; that the lands and lots of appellants are on the north side of the river; and that some of the land is at times subject to overflow from the river. This is no reason why it should not be annexed to the town of North Des Moines. 'If it is a valid objection, then, whenever a city or town is located on both sides of a river, the bottom lands should not be included in the municipality, because the land may be subject to overflow. There was no unreasonable nor even improper extension of the limits of the town. This is apparent from subsequent events. The land north of that owned by the

*5. ——: unreasonable extension of territory.*

appellants was at that time laid out in lots, streets and alleys, and since that all this territory, including the whole of North Des Moines, has been annexed to the city of Des Moines. The appellants have no more right to exemption from municipal taxes and assessments than property-owners in East Des Moines had before the bottom land from Capitol Hill to the river was reclaimed from overflow.

VII. It is urged that the paving in question was secured to be ordered by the council by bribery. It appears that the paving was ordered by a resolution of the town council on the twenty-third day of May, 1887. It was provided in the resolution that "said improvements, including all grading, be done without expense to the town." The town was out of money, and in debt. Three persons who owned land north of that owned by appellants were largely interested in having the street paved. Before the contract for paving was let, they entered into a bond, by which they bound themselves to grade the street, and this undertaking on their part induced the members of the council to make the contract with Smith & Co. to do the paving. The obligors in the bond performed the contract and graded the street at an expense to themselves of some twenty-three hundred dollars. The evidence shows that there was no secrecy about the transaction. It was all done in an open and public manner, after being fully and publicly canvassed and discussed at a meeting of the council. Under these circumstances, the claim that the council was bribed to let the contract cannot be sustained. Donations made in aid of public enterprises, such as the removal of county-seats, the location of public institutions and institutions of learning, and the like, are not bribery nor official corruption. *Dishon v. Smith*, 10 Iowa, 212; *Hawes v. Miller*, 56 Iowa, 395; *Copeland v. Packard*, 16 Pick. 217; 1 Dill. Mun. Corp., sec. 458; *Crochet v. City of Boston*, 5 Cush. 182.

6. ——: paving streets: bribery: what is not.

VIII. It is urged that the levy of the assessment or tax was so defective as to avoid its legality. It is argued that, as the statute authorizing incorporated towns to pave does not prescribe notice to property-owners, towns have no power either to provide for notice or give notice to property-owners, and the notices actually given were not sufficient. It was held in *Gatch v. City of Des Moines*, 63 Iowa, 718, that the property-owner is entitled to such notice. But it is said in that case that "the law does not provide for notice to be given to the owner; but it does not follow that, by reason of this omission in the laws, a city council, or other board of officers authorized to assess property for taxation, may not, by ordinance or otherwise, provide for some notice of the assessment to be given, that the owner of the property may appear and show cause why the assessment should not be binding and conclusive upon him. All that he can require is that he shall have an opportunity at some time to be heard in the matter, before the assessment attaches and becomes a lien upon his property." The town of North Des Moines, by an ordinance, provided for the service of notice upon the abutting owner, and the evidence shows that all of these appellants were duly notified of the assessments made upon their property, and that they had an opportunity to be heard in resistance of the amount assessed against their land and lots; and it is to be remembered that, where the amount can be ascertained by a mere mathematical calculation, and where no judgment and discretion are required to be exercised, no notice of the assessment is necessary. *Amery v. City of Keokuk*, 72 Iowa, 701.

*7. ——: taxes for paving: notice of assessment to taxpayers.*

IX. Appellants contend that there was no public highway upon which the pavement was laid. The evidence upon the question, as we view it, establishes the following facts: Sixth street in the city of Des Moines extended through North Des Moines to the river. In the year

*8. ——: ——: street not a legal highway.*

Ford v. The Town of North Des Moines.

1885 or 1886 the street was paved to the river, and a wagon bridge was built over the river by a private corporation. At that time the land now owned by appellant Ford was used as farm land. It was not laid out in lots, streets and alleys; but his grantor, who then owned the land, conveyed to the bridge company a right of way through the land, sixty-six feet wide. The bridge company, by writing, gave the bridge to the public, and filed the writing with the board of supervisors, in consideration of thirteen hundred dollars paid by the county. The right of way through the land became a public highway, and was actually an extension of Sixth street. When the town of North Des Moines ordered it to be paved, it adopted it and recognized it as a street, and we think that Ford cannot now be allowed to claim that it is not a public highway.

The foregoing considerations dispose of every material question in all the cases. It may be that some of the objections made by counsel for appellants ought not to have been entertained, as they are in the nature of collateral attacks upon the annexation proceedings, which could only be questioned in a proceeding by *quo warranto;* and there is a very grave question as to whether the several cases are so abstracted and presented as to entitle appellants to be heard in this court. We thought it better, however, to dispose of the causes upon their merits, and upon the points made by appellants' counsel. In conclusion, we have to say that these assessments are manifestly just as to all the appellants except Ford. The amount assessed against him is about seven thousand dollars; but if it is a hardship, he brought it upon himself. He purchased the land in the month of October, 1887, after all the grading had been completed, and when part of the pavement had been laid. He bought a lawsuit, and commenced the suit himself. The judgments and decrees of the district court will be

9. ——: ——: resistance: estoppel.

AFFIRMED.