# RUTH KUHLMANN v. EDUCATIONAL PUBLISHERS, INC., ALSO *d.b.a.* EDUCATIONAL TEST BUREAU, AND ANOTHER.[1]

June 24, 1955.

No. 36,565.

---

[1]Reported in 71 N. W. (2d) 889.

*O. S. Vesta,* for appellant.

*David W. Raudenbush* and *Morgan, Headley, Raudenbush & Morgan,* for respondent.

DELL, CHIEF JUSTICE.

Action commenced in municipal court of Minneapolis to recover damages for breach of contract. Defendant appeals from judgment in favor of the plaintiff entered pursuant to an order granting plaintiff's motion for summary judgment.

In 1937 the plaintiff's husband, Frederick Kuhlmann, and Rose G. Anderson, who were co-authors of an intelligence test known as the Kuhlmann-Anderson Intelligence Test, entered into an agreement with the defendant concerning the sale of said test. Under the terms of this contract, the defendant was given the sole right to publish and sell the test in consideration of its agreement to pay the authors a royalty of 10 percent of the retail sales. The contract provided that it was to remain in force for a period of five years and thereafter from year to year unless terminated either by the authors or the defendant upon written notice given one year previous to the expiration of the five-year period or one year previous to the expiration of any subsequent year. It further provided that, in the event of the death of either of the authors, "the living author shall not terminate this agreement except with the written permission of the executor of the estate of the other author."

On April 19, 1941, Frederick Kuhlmann died intestate leaving as his sole heirs his wife, Ruth Kuhlmann, who is the plaintiff in this action, and a son, Frederick Kuhlmann, Jr. On October 16, 1941, the plaintiff entered into a contract with the defendant concerning the completion and publication of another intelligence test, known as the Kuhlmann-Finch Test (sometimes referred to as the Kuhlmann Group Test of Intelligence), which Dr. Kuhlmann had left unfinished at his death. This contract was subsequently modified by another contract entered into between the parties on July 20, 1945.

The latter contract, which is the subject matter of this litigation, contained the following provisions which are material here:

"II.

"In consideration of this undertaking, * * * [plaintiff] agrees to accept as royalty remuneration for her interest in said undertaking, either one thousand dollars ($1,000.00) per year, or two per cent (2%), of the net sales of said publication, whichever is the larger, throughout the United States and possessions. Said payment of one thousand dollars ($1,000.00) a year, or two per cent (2%), will be the remuneration in consideration of said undertaking, and also in fulfilment of the obligations of the * * * [defendant] to the * * * [plaintiff] of a certain agreement executed January 2, 1937 between Frederick Kuhlmann and Rose G. Anderson and the * * * [defendant], said January 2, 1937 agreement thus to be fulfilled for the term of this contract agreement. The payment provisions herein specified shall begin to take effect at the time said undertaking has been completed for general public use, and after 200,000 copies have been marketed.

"III.

"[This paragraph provides for an additional two percent royalty of net sales of both the Kuhlmann-Finch and Kuhlmann-Anderson Tests to be paid into a memorial research fund known as the Kuhlmann Research Fund, such payment to commence after the marketing of 200,000 copies of the Kuhlmann-Finch Test.]

"IV.

"The royalty provisions contained in paragraphs II and III of this agreement shall remain in full force and effect for a period of five years and, thereafter also, unless two per cent (2%) fails to produce $1,000.00 per year of royalty from either or both this undertaken publication and also from the Kuhlmann-Anderson Intelligence Tests. In such an event the payment of royalties shall be at the rate of two per cent (2%) to * * * [plaintiff] and two per cent (2%) to the Kuhlmann research fund from either or both publications specified immediately above.

* * * * *

## "VIII.

"It is also hereby agreed that the publishing contract now in existence and force relative to the publication of the KUHLMANN-ANDERSON INTELLIGENCE TESTS shall not be terminated by RUTH KUHLMANN, her estate, executor or assign, for the period of the duration of this contract agreement."

In 1950 Rose Anderson commenced a declaratory judgment action in the United States District Court of Minnesota to have the validity of a notice of termination of the 1937 contract served by her on the defendant judicially determined, it being her contention that under the notice served by her the contract would terminate December 31, 1950.[2] Neither the plaintiff nor her son, Frederick Kuhlmann, Jr., were parties to this notice of termination, although the plaintiff indicated that she had no objection to the cancellation. In interpreting the 1937 contract, the court held that it was not necessary for an executor or administrator of the deceased author to join in the cancellation and that the successors in interest, namely, Ruth Kuhlmann and her son, could, together with the living author, normally effectuate such a cancellation. It further held that, since the defendant, under the terms of the 1945 contract, had precluded Ruth Kuhlmann from joining in such a cancellation, it could not insist upon or require her to be a party to the notice, and that Rose Anderson could cancel the 1937 contract as against the defendant without Mrs. Kuhlmann joining in the cancellation proceedings. However, since the other heir, Frederick Kuhlmann, Jr., was not a party to the 1945 contract between Mrs. Kuhlmann and the defendant, the court held that Rose Anderson could not cancel the 1937 contract unless she obtained his written consent and joinder and that accordingly the notice of cancellation was ineffective.

Subsequently, Rose Anderson, Frederick Kuhlmann, Jr., and, apparently as a precautionary measure, the deceased author's special administrator joined in a notice of cancellation of the 1937 contract

---

[2]Anderson v. Educational Publishers, Inc. (D. Minn.) No. 3208 Civil, December 13, 1950 (unreported memorandum decision by Chief Judge Gunnar H. Nordbye).

which became effective December 31, 1951. Although there is no evidence to support the contention, we shall accept for the purposes of this opinion the defendant's statement that, since the cancellation of the 1937 contract on December 31, 1951, the plaintiff has received and will continue to receive sums in excess of $1,000 per year as income from the sale of the Kuhlmann-Anderson Test to publishers other than the defendant.

In 1952 the sale of the Kuhlmann-Finch Test by the defendant exceeded the stipulated royalty-free 200,000 copies. In October 1953 the plaintiff received $275.41 which constituted two percent of the sales made during the first half of that calendar year. In March 1954 the defendant tendered plaintiff $584.26 which represented two percent of the sales made during the second half of 1953. Plaintiff rejected this tender claiming that she was entitled to a minimum of $1,000 for the calendar year, and that therefore the unpaid balance was $724.59 rather than the $584.26 tendered. The trial court ordered judgment in her favor for $724.59 plus interest.

■ The defendant not only has neglected to comply with many provisions of Supreme Court Rule VIII (222 Minn. xxxii), relating to the contents of an appellant's brief, but has entirely failed to make any assignments of error. While ordinarily this court will refuse to consider errors that are not assigned,[3] we have considered defendant's arguments in the instant case to the extent that plaintiff has voluntarily replied to them.[4]

■ The defendant contends that, since the plaintiff is receiving in excess of $1,000 from the sale of the Kuhlmann-Anderson Test from other publishers, it is obligated to pay her only two percent of the sales of the Kuhlmann-Finch Test. It is argued that when it entered into the 1945 contract the defendant had exclusive publication rights to both tests, and hence the parties clearly intended that the $1,000 minimum would be "earned" from both tests and not from the Kuhlmann-Finch Test alone. In particular the defendant points to the provision of paragraph II of the 1945 contract which specifies that the payment shall also fulfill defendant's obligation to the plaintiff

[3] 1 Dunnell, Dig. (3 ed.) § 358.
[4] See, Erickson v. Mathwig, 226 Minn. 55, 31 N. W. (2d) 918.

under the 1937 contract, and paragraph IV which eliminates the $1,000 minimum royalty provision if, after five years, this amount is less than two percent of the aggregate sales of both the Kuhlmann-Finch and Kuhlmann-Anderson Tests.

If by "earned" the defendant means that the $1,000 minimum royalty must be derived from the sale of both tests, its argument is clearly without merit. When entering into the 1945 contract, the defendant probably was under the impression that the covenant prohibiting the plaintiff from terminating the 1937 contract would result in the defendant having exclusive publication rights to both tests and that the $1,000 minimum royalty would be earned from the sale of both tests. Such speculation, however, cannot be used to alter the unequivocal language of the agreement.[5] The plaintiff here is claiming royalties for the first year of the five-year guarantee period provided for in paragraph II. This paragraph specifically states that the plaintiff shall receive as royalty remuneration for her interest $1,000 per year or two percent of the net sales "of said publication," whichever is the larger, referring to the Kuhlmann-Finch Test. There is nothing to indicate that the $1,000 minimum must come from any particular source. The royalties during this five-year period, whether they be based on two percent of net sales or $1,000, are not affected or conditioned in any manner on the quantity of sales of the Kuhlmann-Anderson Test. The language of the contract in this regard is neither ambiguous, incomplete, nor indefinite. Nor does any ambiguity or indefiniteness arise when it is considered in connection with other provisions of the contract. Paragraph IV, which conditions the continuation of the $1,000 minimum royalty on the sales of both tests, arises only after the five-year period has elapsed, and obviously cannot alter the plain provisions for royalty payments during the first five years. Clearly there is no requirement in the contract that the $1,000 minimum during the first five years be derived from the sale of both the Kuhlmann-Anderson and Kuhlmann-Finch Tests.

[5]See, Matthews v. Minnesota Tribune Co. 215 Minn. 369, 10 N. W. (2d) 230, 147 A. L. R. 147; 4 Dunnell, Dig. (3 ed.) § 1817; 3 Williston, Contracts (Rev. ed.) §§ 609, 610.

Another possible interpretation of defendant's argument is that the royalty payments, although computed solely on the sale of the Kuhlmann-Finch Tests, were to be made in consideration for publication rights to both tests, and that there was a partial failure of the consideration when the 1937 contract was cancelled. Defendant, however, does not suggest that the contract became unenforceable in its entirety, but rather that it was "a severable contract" and the cancellation necessitated "a change in the method of computing royalty." Even if we were to assume that there was a partial failure of consideration, there is no provision in the contract or any other apparent basis for determining what portion of the royalties during the first five years constituted consideration for the publication rights to the Kuhlmann-Anderson Test and what portion was intended to be paid for the rights to the Kuhlmann-Finch Test. Although the plaintiff has not argued the severability question, since the consideration does not appear to be apportionable, we can see no merit in defendant's contention that the contract was intended to be a divisible one.[6]

■ Although the basis of defendant's theory is not clear, it also argues that, because the plaintiff encouraged and co-operated in the termination of the 1937 contract, "she is now estopped from demanding any additional royalty." There is evidence to the effect that in 1948 the plaintiff joined Rose Anderson in signing a notice of cancellation but, on the advice of plaintiff's attorney, this notice was never served. In addition, Mrs. Kuhlmann's testimony as well as the pleadings in the Anderson case indicate that she had no objection to the purported cancellation which was the subject matter of that litigation. But we fail to see how this attitude on the plaintiff's part estops her from asserting her rights under the 1945 contract. While the doctrine of equitable estoppel is a flexible concept not readily susceptible of any fixed definition,[7] its application in the

[6]See 12 Am. Jur., Contracts, § 360, to the effect that partial failure of consideration can constitute a defense *pro tanto* if the contract and consideration are apportionable.

[7]See, Village of Wells v. Layne-Minnesota Co. 240 Minn. 132, 60 N. W. (2d) 621; State v. Horr, 165 Minn. 1, 205 N. W. 444. A well-recognized general

instant case would not only be novel but completely unjustified. There is no evidence showing that the plaintiff was a party to or indirectly procured the cancellation of the 1937 contract. To the contrary, the evidence shows that rather than persuading Rose Anderson to terminate the contract, the plaintiff merely gave her passive approval after Miss Anderson had initiated the action. The plaintiff specifically declined to join Miss Anderson in a notice of cancellation for fear that she would thereby violate her agreement with the defendant. While silence or failure to act may, under some circumstances, give rise to an estoppel,[8] the prohibition involved here was that the 1937 contract "shall not be terminated" by the plaintiff. Inasmuch as the plaintiff did not take any overt action inconsistent with this provision, the defendant cannot avail itself of the doctrine of equitable estoppel to avoid its contractual obligations to her.

■ In its brief the defendant has listed several principles of law applicable to summary judgment procedure, presumably because it feels that the facts in the instant case are in dispute and that consequently the trial court should not have granted summary judgment.[9] However, the defendant has failed to point out wherein any dispute exists and has not assigned this procedural question as error nor listed it as a question involved in this appeal. The plaintiff, noting that error in this respect has not been assigned, has only briefly commented on this point. While it is doubtful whether the matter is properly before us for review, we are unable to discern any "geniune issue as to any material fact" and are of the opinion that summary judgment was properly granted.

Affirmed.

definition of equitable estoppel is given in 3 Pomeroy, Equity Jurisprudence (5 ed.) § 804.

[8] See, *e.g.*, Purcell v. Thornton, 128 Minn. 255, 150 N. W. 899; 6 Dunnell, Dig. (3 ed.) § 3196; 3 Pomeroy, Equity Jurisprudence (5 ed.) § 808a.

[9] See, 3 Youngquist & Blacik, Minnesota Rules Practice, Rule 56.03.