**METROPOLITAN SPORTS FACILITIES COMMISSION, Respondent,**

v.

**GENERAL MILLS, INC., Appellant.**

**No. C1–90–123.**

Supreme Court of Minnesota.

May 31, 1991.

J.D. Jackson, Juan C. Basombrio, Dorsey & Whitney, Minneapolis, for appellant.

David R. Knodell, Minneapolis, for respondent.

## OPINION

KEITH, Chief Justice.

The parties dispute the effect the repeal of Minn.Stat. § 473.568 (1978), had on a contract between respondent Metropolitan Sports Facilities Commission and petitioner General Mills that required General Mills to purchase unsold Minnesota Vikings football tickets under specified circumstances. The Commission sought a declaratory judgment and an injunction requiring General Mills to purchase tickets pursuant to the contract. The trial court, holding that the existence of Minn.Stat. § 473.568 (1978), was not a condition precedent to General Mills' performance under the contract, and that the repeal of section 473.568 did not frustrate the purpose of the contract,[1] found the agreement valid and enforceable. A divided court of appeals upheld the trial court's conclusions, rejected General Mills' constitutional arguments, and suggested that General Mills waived any right to terminate the contract by continuing to accept benefits under the contract. *Metropolitan Sports Facilities Comm'n v. General Mills*, 460 N.W.2d 625 (Minn.App.1990). We affirm.

## I

In 1977, the Minnesota Legislature, with the intent of either renovating old Metropolitan Stadium or building a new multipurpose sports facility, passed the Metropolitan Sports Facilities Act. Act of May 16, 1977, ch. 89, § 1, 1977 Minn.Laws 141, *codified at* Minn.Stat. § 473.551–595 (1978). The legislation established the Metropolitan Sports Facilities Commission (Commission) to accomplish this goal and to operate the facility, which would be the home of Minnesota's professional football team, the Minnesota Vikings. *See generally* Minn.Stat. § 473.553 (1990).

The National Football League (NFL) had and still has a blackout rule in its franchise agreement with league teams including the Vikings. The blackout rule prohibits local telecasting of league football games unless the game is 100% sold-out 72 hours before gametime. The Minnesota Legislature, aware of the blackout rule and concerned that the larger seating capacity of a new stadium would result in fewer sellouts and consequently the blackout of more Vikings games, passed a statute that prohibited a tenant of the new sports facility from being a party to an agreement that would blackout the local telecast of a game when at least 90% of the tickets had been sold 72 hours before gametime. Act of May 16, 1977, ch. 89, § 8, 1977 Minn.Laws 141, 147–48, *codified at* Minn.Stat. § 473.568 (1978).

To accommodate the Vikings, who faced a dilemma due to the conflict between the NFL blackout rule and section 473.568, the 1979 legislature required as a prerequisite to the issuance of stadium construction bonds, that the Commission enter into one or more agreements with private purchasers who would purchase tickets under specified circumstances to permit the Vikings to comply with the NFL blackout rule and to allow Minnesota residents to watch the telecasts of home Vikings games when at least 90% of the tickets had been sold 72 hours before gametime. Act of May 25, 1979, ch. 203, § 8, 1979 Minn.Laws 375, 381, *codified at* Minn.Stat. § 473.581, subd. 3(m) (1980). On August 21, 1979, General Mills saved the day for the construction of the Hubert H. Humphrey Metrodome by entering into a ticket-purchase contract that satisfied the requirements of sections 473.568 and 473.581, subdivision 3(m).

The contract provided, in part:

THEREFORE, in order to satisfy the requirements of Section 473.568 of

---

1. General Mills does not assert its frustration of purpose argument in this appeal.

Minnesota Statutes, 1978, and of Section 473.581, Subdivision 3(m) of the Minnesota Statutes, 1978, as amended, the Commission and the Purchaser agree as follows:

1. This Agreement, and the purchase commitments set forth herein, shall be effective during each of the first twenty years of the operation of the sports facility constructed pursuant to the above statutes. Commencement of operation shall be defined as the date on which the professional football organization which is a major tenant of the facility plays its first home game in the sports facility; provided, however, *this Agreement shall not be effective and General Mills shall have no further purchase commitments in the event the [sic] Section 473.568 is finally determined by a court of competent jurisdiction to be unconstitutional and void, or if Section 473.568 is otherwise ineffective except in the case of a repeal thereof based solely upon the continued effectiveness of this Agreement.*

2. Purchaser agrees that, *if the professional football organization which is a major tenant of the facility cannot comply with the provisions of Minnesota Statutes, 1978, Section 473.568*, because of the terms of an agreement under which the professional football league of which the tenant is a member has sold or otherwise transferred all or part of the rights of the league's member organizations in the sponsored telecasting of games of the organization or otherwise, *Purchaser will, whenever more than 90% but less than 100% of the tickets of admission for seats at any professional football game to be played in the facility* (which tickets were available for purchase by the general public 120 hours or more before the scheduled beginning time of the game either at the sports facility where the game is to be played or at the box office closest to the facility)

*have been purchased 72 hours or more before the beginning time of the game, purchase or guarantee the purchase of all such tickets which remain unsold as required to permit the telecast to areas within the state which otherwise would not receive the telecast.*

(emphasis added).

In addition to the good will and favorable publicity General Mills enjoyed, the contract granted General Mills one minute of free advertising on the scoreboard during each Vikings home game and convenient access to the Metrodome for its shuttle buses, regardless of whether it was required to purchase tickets.

The Vikings played their first game in the newly-constructed Metrodome in 1982. In 1983 a group of Minnesotans attempted to attract the NFL's Superbowl to the Metrodome. A Superbowl Task Force discovered that the NFL objected to the Metrodome as a potential Superbowl site because Minnesota had the statute on its books that conflicted with the league's blackout rule. As part of the successful effort to bring the Superbowl to Minnesota, the 1984 legislature repealed section 473.568 "based solely upon the continued effectiveness" of any ticket-purchase agreements entered into by the Commission. Act of May 2, 1984, ch. 607, § 2, 1984 Minn.Laws 1446, 1450.

The parties disagreed about the effect of the repeal on the contract but agreed not to determine its validity until General Mills' performance was required. General Mills continued to receive advertising pursuant to the ticket-purchase contract through the 1988–89 football season.[2] When the October 1, 1989, Vikings game did not sell out, the Commission brought this action.

II

A

■ The court's role in interpreting a contract is to ascertain and give effect to

---

**2.** In dicta, the court of appeals stated that "there was evidence from which a court could conclude that General Mills waived its right to terminate its obligations under the agreement by continuing to treat the agreement as effec-

tive." *Metropolitan Sports Facilities Comm'n v. General Mills,* 460 N.W.2d 625, 630 (Minn.App. 1990). Because of our resolution of the case we do not reach this issue.

the intention of the parties. *Karim v. Werner*, 333 N.W.2d 877, 879 (Minn.1983). General Mills and the Commission, freely entering into this contract for the purchase of unsold Vikings tickets, prudently specified the consequences that would attach to the occurrence of several events. The parties anticipated a repeal of section 473.568 in paragraph 1 of the Agreement:

> this Agreement shall not be effective * * * in the event the [sic] Section 473.-568 is finally determined by a court of competent jurisdiction to be unconstitutional and void, or if Section 473.568 is otherwise ineffective except in the case of a repeal thereof based solely upon the continued effectiveness of this Agreement.

As anticipated by the parties, the legislature, in fact, repealed section 473.568:

> Minnesota Statutes 1982, section 473.568, is repealed. This repeal is based solely upon the continued effectiveness of the agreement or agreements entered into by the Metropolitan Sports Facilities Commission and the purchaser or purchasers of tickets of admission as provided for by Laws 1979, chapter 203, section 8. Such agreements shall remain in effect throughout their terms and the commission shall have no authority to terminate or modify such agreements.

Act of May 2, 1984, ch. 607, § 2, 1984 Minn.Laws 1446, 1450.

 We hold that the trial court correctly determined that the language of the contract is unambiguous. A contract is ambiguous if it is susceptible to more than one interpretation based on its language alone. *Lamb Plumbing & Heating Co. v. Kraus–Anderson, Inc.*, 296 N.W.2d 859, 862 (Minn.1980). When pressed to identify language in the contract that is ambiguous, counsel for General Mills argued that the language is ambiguous because the existence of section 473.568 is fundamental to the contract. The plain language of the contract, however, contemplates a situation in which section 473.568 could be repealed and the agreement would remain in effect.

At the time of contracting General Mills and the Commission, resolving several contingencies that could arise during the contract term, agreed that they would remain bound under the contract "in the case of a repeal [of section 473.568] based solely upon the continued effectiveness of this Agreement." This anticipated condition arose, and, according to the provisions of the contract, the parties remain bound under the ticket-purchase contract.

General Mills urges the court to adopt the following interpretation of the contract: section 473.568 would terminate the ticket-purchase contract unless General Mills consented to its continued effectiveness after the repeal. Where a written contract is unambiguous, the court must deduce the parties' intent from the language used. *Burnett v. Hopwood*, 187 Minn. 7, 14, 244 N.W. 254, 257 (1932); *see also Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974). A party cannot alter unequivocal language of a contract with speculation of an unexpressed intent of the parties. *Kuhlmann v. Educational Publishers*, 245 Minn. 171, 176, 71 N.W.2d 889, 893 (1955). General Mills' interpretation finds no support in, and in fact, contradicts the language of the contract. The trial court properly disregarded General Mills' extrinsic evidence advancing its interpretation of the ticket-purchase contract.

### B

 General Mills contends that the repeal of section 473.568 discharged General Mills' obligations under the contract because the Vikings' inability to comply with the provisions of section 473.568 was a condition precedent to General Mills' obligation to perform. Because section 473.-568 was repealed, the argument proceeds, the condition precedent could no longer arise. A condition precedent "is any fact or event, subsequent to the making of a contract, which must exist or occur before a duty of immediate performance arises

under the contract." *National City Bank v. St. Paul Fire & Marine Ins. Co.,* 447 N.W.2d 171, 176 (Minn.1989). We agree that the inability of the Vikings to "comply with the *provisions* of Minnesota Statutes, 1978, Section 473.568" (emphasis added) is a condition precedent to General Mills' obligation to perform under the contract. The existence of section 473.568 in current law, however, is not a condition precedent.

The unambiguous language of paragraph 1 of the contract demonstrates that the parties contemplated and provided for a conditional repeal of section 473.568. We presume that the parties intended the clause relating to the repeal of section 473.568 to have effect. *See Chergosky v. Crosstown Bell, Inc.,* 463 N.W.2d 522, 525–26 (Minn.1990). The clause provided that the parties would remain bound "in the case of a repeal [of Section 473.568] based solely upon the continued effectiveness of this Agreement." Paragraph 2 of the contract provides that if the Minnesota Vikings "cannot comply with the provisions of Minnesota Statutes, 1978, Section 473.568" General Mills will purchase tickets according to the terms of the contract. From the plain language of the contract read as a whole, the parties' intent is manifest. The parties referenced the provisions of section 473.568 that existed in 1978, the law in effect at the time of contracting. When the legislature repealed section 473.568 based on the continued effectiveness of ticket-purchase contracts entered into by the Commission, the contract between General Mills and the Commission remained

valid. General Mills' obligation to perform still is subject to a condition precedent—the Vikings' inability to comply with the provisions of section 473.568 that existed at the time of contracting. Accordingly, the repeal of section 473.568 does not discharge General Mills from its obligations under the contract.

### III

General Mills raises several other claims to support its position that the repeal of section 473.568 discharged its obligations under the ticket-purchase contract. Woven through each of these arguments is a complaint that the legislature acted with the General Mills ticket-purchase contract specifically in mind.[3] General Mills, however, does not contend that the legislature's action constituted special legislation under Minn.Const. art. XII, § 1.

First, General Mills argues that the repealer violates the separation of powers doctrine.[4] General Mills claims that the legislature exercised a judicial function by purporting to determine that General Mills is liable under its contract with the Commission. General Mills argues that the legislature attempted to resolve a disputed claim with the following language in the repealer: "[s]uch agreements shall remain in effect throughout their terms." The legislature certainly could not resolve a contract dispute between the Commission and General Mills. *See Sanborn v. Commissioners of Rice County,* 9 Minn. 273 (Gil.) 258, 262–63 (1864) (declaring unconstitutional legislation requiring county com-

---

**3.** The legislative history clearly indicates that the legislature, at the time it repealed section 473.568, wanted to accomplish two goals simultaneously. The legislators wanted to increase the possibility of attracting the Superbowl to Minnesota by repealing the blackout statute, and they wanted to ensure that Minnesotans could watch home Vikings games when at least 90% of the tickets had been sold 72 hours before gametime. The hearings of the House of Representatives committee debates clearly demonstrate that the legislators made a conscious effort to phrase the repeal of section 473.568 in a manner that would not affect the agreement between the Commission and General Mills and therefore would continue to permit Minnesota

viewers to watch telecasts of the Vikings at the Metrodome as long as the game was 90% sold-out 72 hours in advance.

**4.** Article III of the Minnesota Constitution provides:

The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution.

missioners to decide claims of Sanborn against a school district). The legislature also could not mandate that the contract remain in effect contrary to the terms of the agreement. The legislature, however, has done neither in this case. No dispute existed between the Commission and General Mills until the legislature acted; the parties then disputed the effect of the legislature's repeal of section 473.568 on the ticket purchase contract, a proper subject for judicial resolution.

 General Mills also claims that the repealer violates separation of powers because the legislature instructed the judiciary how to interpret the repeater. The court's function, in construing a statute, is to ascertain and effectuate the intent of the legislature. *City of St. Louis Park v. King,* 246 Minn. 422, 429, 75 N.W.2d 487, 492–93 (1956). Rather than invading the judicial function, the repeal merely delineates clearly the legislature's intent that the repeal not affect ticket-purchase agreements entered into by the Commission.

 Second, General Mills claims that the repeal of section 473.568 violated due process freedom of contract principles. To challenge successfully an interference with the liberty of contract protected by the state and federal due process clauses, one must demonstrate that the action is not rationally related to the achievement of a legitimate governmental purpose. *AFSCME Councils 6, 14, 65 and 96 v. Sundquist,* 338 N.W.2d 560, 574 (Minn. 1983). General Mills argues that the repealer violates due process because the legislature exceeded its constitutional authority by exercising a judicial function. In effect, General Mills is merely clothing its groundless separation of powers claim in this due process claim that also must fail.

In addition, General Mills claims that the legislature forced a contractual position on General Mills. This argument also is without merit. The legislature did not coerce General Mills into entering this contract. These sophisticated parties, presumably with the assistance of experienced and able counsel, exercised their liberty of contract and now are accountable for the product of their negotiations. The legislature did not mandate inclusion of the contract clause providing that the parties would remain bound in the case of a repeal of section 473.568 "based solely on the continued effectiveness of this Agreement." The parties freely negotiated and voluntarily agreed to be bound by the provisions of the ticket purchase contract.

 Finally, General Mills claims that even if the parties agreed to remain obligated in the event of a "repeal [of section 473.568] based solely upon the continued effectiveness of this Agreement," this court cannot give effect to this provision because it attempts to confer a power on the legislature that it otherwise could not constitutionally exercise. General Mills analogizes this case to one in which the parties agreed to submit their claims to the supreme court when the court did not have jurisdiction to hear the case. *Cf. State v. Dike,* 20 Minn. 363 (Gil.) 314, 317 (1874) (under separation of powers doctrine, court cannot exercise jurisdiction over executive officer even if the officer consents). Here, the parties conferred no power on the legislature. We reiterate that the parties merely anticipated various circumstances that might arise during the term of the contract including possible courses of action the legislature might take. When one of those circumstances materialized, the provisions of the contract, freely agreed to by the parties, afforded the consequences that must follow. The agreement between General Mills and the Commission thus remained in effect after the 1984 repeal of section 473.568.

Affirmed.