JAMES P. ROSS, PLAINTIFF IN ERROR, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX ET AL., DEFENDANTS IN ERROR.

Argued March 11, 1903—Decided May 1, 1903.

The County Park act, approved March 5th, 1895 (*Gen. Stat.*, *p.* 2618), authorizes the appointment, by a justice of the Supreme Court, of commissioners to lay out public parks in any county having a population exceeding two hundred thousand, but provides that the act shall not go into operation in any county unless the voters of the county accept it, and it directs certain county officers to take steps for submitting the question of acceptance to the voters at the next election. *Held*—

(1) That the distinction drawn between the more populous counties and the others is legitimate for the purposes of the act.

(2) That the provision for submission at the "next election" is directory only, and the act may be accepted at a subsequent election, and may be accepted in counties which acquire the designated population after the passage of the act.

(3) That the legislature had constitutional authority for conferring upon a justice of the Supreme Court the power of appointing the park commissioners.

On error to the Supreme Court.

For the plaintiff in error, *Henry Young.*

For the board of chosen freeholders, *Joseph L. Munn.*

For the Essex county park commission, *Charles L. Corbin.*

The opinion of the court was delivered by

DIXON, J. This writ of error brings under review the judgment of the Supreme Court entered on the opinion of Mr. Justice Collins, reported *ante p.* 143, to which reference is made for the facts of the case.

The only questions discussed in argument here relate to the constitutionality of "An act to establish public parks in certain counties in this state and to regulate the same," approved March 5th, 1895. *Gen. Stat., p.* 2618.

One of the objections urged against the act is that, because it is limited to counties having a population exceeding two hundred thousand, it is a special regulation of the internal affairs of counties, and thus violates article 4, section 7, paragraph 11 of the constitution.

But we think the legislature may divide counties on the basis of their population for the purpose of enabling the more populous to lay out public parks. Densely settled communities have the greater need for these open spaces, to which the inhabitants may resort for refreshment, and, hence, there is a rational connection between the basis of classification and the purpose of the enactment. As was said in *Paul* v. *Gloucester County*, 21 *Vroom* 585, 592: "Whether the basis of classification is wise or judicious, or whether it will operate as fairly as some other basis that might be adopted, is a question for the legislature, and not for the courts. The extreme limit of our inquiry in this direction is: Does population bear any reasonable relation to the subject to which the legislature has applied it; is it germane to the law?" As this act forms and deals with a legitimate class it is in this feature general.

Another objection presented is that the act violates the same paragraph of the constitution because, according to the words of the statute, it cannot take effect in any county unless the voters of the county accept it at the next election held after its passage, thus practically confining it to counties then having the designated population.

If this be the real meaning of the statute it must be adjudged unconstitutional under the rule laid down in *De Hart* v. *Atlantic City*, 34 *Vroom* 223. But courts never approve an interpretation of a statute which will defeat its main purpose, if there be any reasonable construction which will uphold it. *Atlantic City Water Works Co.* v. *Consumers Water Co.*, 17 *Stew. Eq.* 427.

The legislative design fairly expressed by this statute is that to the voters of every county having the required population should be tendered the right of accepting the benefits of the law, and in order to insure the enjoyment of this right

the act imposes certain duties upon the county officers and points out the time for their performance. But there certainly is no clear declaration, and, therefore, it should not be believed, that the legislature considered exact compliance with the method provided for securing the right as more important than the right itself. Our construction of the statute is that the provision for submitting the matter at the "next election" is directory; that in counties having the proper population when the act was passed the local officers are directed to perform their duties with reference to the first election thereafter, and in counties subsequently acquiring sufficient population those duties will relate to the next election after such acquisition; but that in both cases the duties enjoined continue until performance; they cannot be discharged by neglect. *Albright* v. *Sussex Lake Commissioners,* 39 *Vroom* 523.

A further objection to the validity of the act is that, by requiring the appointment of the park commissioners to be made by a justice of the Supreme Court it violates article 3 of the constitution which declares that "the powers of the government shall be divided into three distinct departments—the legislative, executive and judicial; and no person or persons belonging to or constituting one of these departments, shall exercise any of the powers properly belonging to either of the others, except as herein expressly provided."

This article contains three clauses, a distributive clause—"The powers of the government shall be divided into three distinct departments—the legislative, executive and judicial;" a prohibitive clause, "and no person or persons belonging to, or constituting one of these departments, shall exercise any of the powers properly belonging to either of the others;" and an excepting clause, "except as herein expressly provided."

The distributive clause cannot be read as the declaration of an abstract proposition, that the powers of government are naturally divided into legislative, executive and judicial departments; for the words indicate, not the powers of govern-

ment generally, but "the powers of *the government,*" that is, the government then being formed, and a division not already existing, but one about to be made, "the powers of the government *shall be* divided." Hence we must seek for the scope of the division primarily in the constitution itself. The intended division is there plainly disclosed. ·

By article 4, section 1, paragraph 1, "the legislative power is vested in a senate and general assembly;" by article 5, section 1, "the executive power is vested in 'a governor;'" and by article 6, section 1, "the judicial power is vested in" the courts. The division contemplated by article 3, relates, therefore, only to such powers of the government as are to be exercised by the senate and general assembly, or by the governor, or by the courts. But as was said in *Paul* v. *Gloucester County,* 21 *Vroom* 585, 611, "there is a multitude of governmental duties which have never been and cannot possibly be performed, either by the legislature, or by the governor, and which are certainly not prescribed by the constitution to the judiciary." Clearly the powers appropriate for the discharge of these duties must lie outside of the division intended by this clause of the constitution. Among the powers thus excluded must be the power of appointing local officers, for it cannot be believed that this power, requiring for its proper exercise such diversity of knowledge respecting local needs, was constitutionally devolved upon either of the departments designated. Nothing in the history of this, or of the mother country, would suggest such a course.

The prohibitive clause of this article calls for some consideration of *"the powers properly belonging to"* the several departments into which the powers of our government are divided, for the purpose of determining whether they include the power to appoint officers for the management of local concerns.

Here it should be noted that the force of this clause is, not to confine the legislature to powers which are legislative, the governor to powers which are executive, and the courts to powers which are judicial, but merely to forbid each department to encroach upon the powers properly belonging to

another. The powers properly belonging to each of these departments and, therefore, forbidden to the others, are those assigned under the general terms, legislative power, executive power, and judicial power, and also those specifically delegated by the constitution to the senate and general assembly, or to the governor, or to the courts. But since in these specific delegations of power the appointment of local officers, as distinct from authority to provide for their appointment, is not mentioned, our consideration may be confined to the general terms employed.

The question presented is can the power of appointing to office be said, in our government, to belong properly to the legislature, or to the governor, or to the courts, so that its exercise by any, save one, of these departments is prohibited.

Under the English system of government it might be said that in a sense the king was the depositary of the power of appointing to public office, "the fountain of honor, of office, and of privilege," as Blackstone calls him. 1 *Bl. Com.* 271. But in our system there appears no indication that any single department of the government can be deemed the king's successor in this regard. Although in *State* v. *Parkhurst,* 4 *Halst.* 427 (A. D. 1802), Chief Justice Kirkpatrick decided that the governor, being invested with "the supreme executive power," had authority to fill a vacancy in the office of the clerk of the Common Pleas arising during a recess of the legislature, yet he considered this power not as inherent and absolute, but as created and limited by the necessities of the case, so that it would yield to any other provision made by the legislature. In *Police Commissioners* v. *Pritchard,* 7 *Vroom* 101, 110, it was claimed that the governor of the state had succeeded to this branch of royal authority, but Chief Justice Beasley said: "My consideration of the questions involved in this inquiry has also entirely satisfied me, that there is not the least propriety in the assumption that the authority of our executive over public offices, is at all comparable with that of the English king."

An examination of our constitutional and legislative history will dissipate the idea that the power of appointing to

office is the peculiar property of any one of the three departments of our government.

Under our constitution of July 2d, 1776, the only department on which was directly conferred any power of appointing officers was the legislative, consisting of the council and assembly. This was authorized to appoint the governor, attorney-general, secretary and treasurer of the province, the field and general officers of the militia, and the judges and clerks of the courts. No provision was made for the appointment of other officers except as it was embraced in the general power of legislation. Between that time and the adoption of our present constitution, A. D. 1844, many statutes were passed under this general power; some actually appointing officers, some authorizing their appointment by the council and assembly in joint meeting, some by the governor and council, some by the governor alone, and some by the courts. Thus, an act passed February 5th, 1812, appointed three persons as commissioners to have charge of paving a street in New Brunswick. The council and assembly were authorized to appoint the Supreme Court reporter by act of March 12th, 1806, the surrogates by act of November 28th, 1822, prosecutors of the pleas by act of December 11th, 1823, the clerk in Chancery by act of February 14th, 1831, the Chancery reporter by act of March 13th, 1832, and the inspectors of the state prison by act of February 27th, 1838. The governor and council were authorized to appoint commissioners of pilotage by act of February 8th, 1837. By sundry acts passed between January 30th, 1799, and December 27th, 1826, the governor was authorized to appoint notaries public, inspectors of various kinds of food, and commissioners of deeds; and by other acts passed between November 12th, 1790, and February 27th, 1838, he was authorized to fill vacancies in the office of United States senator, of representative in congress, of presidential elector, of surrogate and of state prison inspector; and by act of November 9th, 1822, the courts of General Quarter Sessions were authorized to appoint prosecutors of the pleas.

In the same interval the constitution of the United States

was adopted, by which the power of appointing officers was conferred partly upon the executive alone and partly upon the executive and a branch of the legislature, but with this express reservation, that the congress might, by law, vest the appointment of inferior officers in the president alone, in the courts of law or in the heads of departments.

In view of this situation it seems improbable that the members of the convention which framed the constitution of 1844 could have regarded the power of appointing officers as one properly belonging to any of the three departments mentioned; and, when we examine the instrument which they framed, the improbable becomes the incredible. For, by it, the power to appoint the major-generals of the militia, the justices of the Supreme Court, Chancellor, judges of the Court of Errors and Appeals, attorney-general, prosecutors of the pleas, clerk of the Supreme Court, clerk of the Court of Chancery and secretary of state is vested in the governor, acting in conjunction with the senate; the power to appoint the adjutant-general, the quartermaster-general and some other militia officers is vested in the governor alone; the power to appoint the judges of the Court of Common Pleas, state treasurer, the keeper and inspectors of the state prison is vested in the legislative department, and the power to appoint the court reporters is vested in persons belonging to the judicial department. Thus the power of appointment was expressly distributed by the constitution itself among all the departments of the government, and it therefore cannot be believed that, within the meaning of the prohibitive clause of this article, the power properly belonged to any one of those departments.

But there is still another aspect of the matter. If, by the unrestrained force of either the distributive or the prohibitive clause of this article, the power of appointing officers could be considered as assigned exclusively to any one of these departments, their significance is restricted by the closing words of the article, "except as herein expressly provided."

This compels an examination of the rest of the constitution for express exceptions to the preceding clauses of the article.

Such exceptions are readily discoverable. Thus the power of remitting fines and forfeitures, and granting pardons, which historically may be deemed a branch of the executive authority, is conferred upon the governor and certain members of the judicial department; the power to try, convict and pass judgment in cases of impeachment, which is a judicial function, is conferred upon the senate. But the exception now directly pertinent is found in article 7, section 2, paragraph 9, declaring that "all other officers, whose appointments are not otherwise provided for by law, shall be nominated by the governor and appointed by him with the advice and consent of the senate." This is an unmistakable recognition of the authority of the law-making department to provide for the appointment of all officers whose appointment is not definitely regulated by the constitution itself.

If, therefore, we had reached the conclusion that the power of appointing officers was, because of its nature, covered by the distributive or prohibitive clause of article 3, we must nevertheless have conceded that, by force of the exception in that article and of the paragraph last above mentioned, the legislature was authorized to make such different provision for the exercise of that power as it deemed proper respecting the officers embraced in that paragraph.

There is yet another clause of the constitution which should be noticed. Article 7, section 2, paragraph 1, declares that "the justices of the Supreme Court and Chancellor * * * shall hold no other office under the government of this state or of the United States."

In *Supervisors of Election,* 114 *Mass.* 247, the justices of the Supreme Court of Massachusetts held that a provision in the constitution of that state forbidding the judicial department to exercise executive or legislative powers prevented the delegation to the justices of the power to appoint supervisors of election, because that was not a judicial function, and the justices were not at liberty to hold any other office than that of justice.

We cannot apply this view to our constitutional provisions. We have endeavored to show that the power to appoint officers

does not properly belong to any single department of our government, and we cannot regard the right to exercise a new function as the possession of a new office. Such a view would give to the word "office" a broader significance than it should receive in such a context as accompanies it in our constitution, where it is spoken of as something to be held, not as something to be done. It would imply that whenever a new duty is cast upon an officer he receives a new office. It would render unconstitutional the act of a justice of the Supreme Court in the naturalization of aliens under the United States laws, for such an act is the exercise of a federal function, distinct from the office of a justice of the state. Indeed, it is difficult to see how it could comport with those numerous statutes passed since 1844, which have increased the powers and burdens of these judicial officers and have been upheld and enforced in all stages of litigation.

But even if we should accept the view of the Supreme Court of Massachusetts on this topic, we are still confronted with the clause above mentioned, which empowers the legislature to provide by law for the appointment of officers, and, reading these two clauses together, we do not find any clear implication that the discretion confided to the legislature without express limitation is so restricted that the legislature may not vest in the justices of the Supreme Court or the Chancellor the appointment of officers unconnected with their judicial functions.

It is our duty to adjudge all acts of the legislature, which are not clearly in violation of the constitution, valid.

We have not thought it necessary to extend this opinion by a discussion of the numerous decisions on cognate subjects in other states, because we think the question turns upon the meaning of our own fundamental law in its entirety, interpreted chiefly by the history of our own commonwealth. Among the adjudications in this state there are but two which may be said to antagonize the conclusion we have reached. In one, *In re Cleveland,* 22 *Vroom* 311, a contrary view was expressed, *obiter,* by Chief Justice Beasley, sitting alone, and in the other, *Schwarz* v. *Dover,* 39 *Id.* 576, the Supreme

Court was largely influenced by the *dicta* in the earlier case, and the significant feature in article 7, section 2, paragraph 9, was not noticed.

The County Park act of March 5th, 1895, is constitutional, and therefore the judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, VREDENBURGH, VOORHEES, VROOM, GREEN. 14.

*For reversal*—None.