GRASSY SLOUGH DRAINAGE DISTRICT No. 1 *v.* NATIONAL BOX COMPANY.

Opinion delivered January 26, 1914.

1. DRAINAGE DISTRICTS—FORMATION—JURISDICTION OF CIRCUIT COURT.— Act No. 221, p. 193, Public Acts of 1911, amending the act of May 27, 1909, Act 279, p. 829, authorizes an original proceeding in the circuit court to establish a drainage district, and authorizes the filing of a petition in the circuit court to change a drainage district formed under the older statutes, to the operation of the act of May 27, 1909. (Page 146.)

2. IMPROVEMENT DISTRICTS—ORGANIZATION—JURISDICTION OF CIRCUIT COURT.—The circuit courts of the State, being the repository of all unassigned jurisdiction, it is within the power of the Legislature to confer on them jurisdiction to determine questions relating to organization of districts not local to a county. (Page 150.)

3. DRAINAGE DISTRICTS—FORMATION—ORIGINAL JURISDICTION OF CIRCUIT COURT.—Circuit courts have original jurisdiction in the formation of improvement districts under Act 193, p. 221, Public Acts 1911. (Page 150.)

Appeal from Greene Circuit Court; *Frank Smith,* Judge; affirmed.

*Johnson & Burr,* for appellant.

1. The Turner act does not authorize an original proceeding in the circuit court to establish a drainage district, nor to change an old district formed under the prior general statute to the operation of said Turner act. Acts 1909, No. 279, § § 1-34; Kirby's Dig., § 1414 *et seq.* 1438.

2. The *ex parte* petition should have been dismissed. The adjournment of court to a day certain, after the term has commenced, is simply a continuation or prolongation of the term adjourned. 1 A. & E. Enc. L. & Prac. 1207, 65 Ark. 404.

*M. P. Huddleston, Block & Kirsch,* for appellees.

1. The Turner act as amended confers jurisdiction on the circuit court. Act 279, Acts 1909, § § 1-34; Kirby's Dig., § § 1414 to 1454.

2. Under § 34, Acts 1909, a petition can be presented at any time the court is in session. The court had the right to make an order of publication on any day of the regular term, or any adjourned day of the term. 1 A. & E. Enc. L. & Pr. 1207; 65 Ark. 404.

McCULLOCH, C. J. A drainage district, embracing lands in Greene and Clay counties, was organized under the general statutes of the State (Kirby's Digest, § § 1414 to 1450), the county courts of each of said counties making co-operating orders in the manner prescribed by the statutes for the purpose of effectuating said organization. Assessments were levied and the sale of bonds authorized and contract let for the construction of the contemplated improvement.

The General Assembly of 1909 enacted a statute (act of May 27, 1909), commonly known as the Turner Act, providing for an additional scheme, without amend-

ing the old law on the subject, for organizing and operating drainage districts. The plan provided for was in the alternative, giving the petitioning land owners the option to proceed under the former general statutes or under the new act.

This statute was amended in 1911, and the act as thus amended is the controlling one in this proceeding. Public Acts 1911, page 193, Act No. 221.

The first section of the Turner Act, as amended by the Act of 1911, contains the following provisions with reference to districts formed out of lands in more than one county:

"If land in more than one county is embraced in the proposed district the application shall be addressed to the circuit court of either county, and all proceedings shall be had in such circuit court. And the circuit court shall apportion all costs between the county or counties in the proportion of the benefits assessed to each county; and such expenses as are incurred prior to the time when such assessment is made, shall be apportioned between the counties in the proportion which the circuit court shall deem to be just and equitable. Whenever the words 'county court' or 'county judge' are used in this act, they shall be construed to mean 'circuit court' or 'circuit judge,' and the words 'county clerk' to mean 'circuit clerk,' in cases where the district contains lands in more than one county. All notices in that event shall be published in newspapers published and having a *bona fide* circulation in each county in which the district embraces lands. All of such districts shall be numbered consecutively or else shall receive names selected by the county court. If the county court does not act promptly in complying with the terms of this section, or of any other section of this act essential to the creation and operation of the district, it may be compelled to do so by mandamus."

Section 34 of the Turner Act, as amended by the Act of 1911, contains the following provision:

"Any district which has heretofore been organized

or which may be hereafter organized under the existing statutes, may become a drainage district under the terms of this act, as follows:   If three owners of real property within any such district shall petition the county court to constitute them a drainage district under the terms hereof, the county court shall give notice of the application by two weeks publication in some newspaper published and having a *bona fide* circulation in the county, and of a time when said petition will be heard.   All owners of real property within the district shall have the right to appear and contest the said petition, or to support the same.   The county court shall hear the evidence and shall either grant the petition or deny the same, as it deems most advantageous to the property owners of the district, and if it grants the petition the said district shall have all the rights and powers and be subject to all the obligations provided by the terms of this act; *provided,* however, that if the majority of the land owners of the district, or the owners of a majority of the acreage therein, petition for the adoption of this act, the county court must make an order declaring that such district shall henceforth be governed by the terms of this act, and shall appoint commissioners of his own selection, who shall carry into effect, without delay, the proposed drainage improvement.''

Appellee and other owners of property within the district instituted this proceeding in the county court pursuant to the terms of the statute just quoted, to change the proceedings from the old statute and to bring them within the operation of the Turner Act, as amended. They filed a petition in the circuit court of Greene County (that county being the one in which the greater portion of the lands in the district are situated), setting forth the proceedings in the county courts of the two counties organizing the district, and praying that notice be given in accordance with the terms of the statute and that, upon the hearing of the petition, the court ''make such order as may be necessary to constitute such Grassy Slough Drainage District a district under the terms of said acts,

and appoint commissioners for said district with full power and authority to proceed with said proposed improvement,'' etc.

The petition was resisted, and from a judgment sustaining the prayer of the petition an appeal has been prosecuted to this court.

The argument of learned counsel for appellant is that the Turner Act does not authorize an original proceeding in the circuit court to establish a drainage district, nor does it authorize a petition in the circuit court to change an old district, formed under the prior general statute, to the operation of the Turner Act.

This contention would doubtless have been sound under the operation of the Turner Act before it was amended; but we are of the opinion that the Turner Act not only authorizes an original petition to the circuit court where the lands lie in two counties, but it authorizes a petition to the circuit court to change from the operation of the old statute to the Turner Act as amended. The Act of 1911 plainly states that "if land in more than one county is embraced in the proposed district the application shall be addressed to the circuit court of either county and all proceedings shall be had in such circuit court," and that "whenever the words 'county court' or 'county judge' are used in this act, they shall be construed to mean 'circuit court' or 'circuit judge,' and the words 'county clerk' to mean 'circuit clerk,' in cases where the district contains lands in more than one county."

This language is materially different from the Turner Act as originally enacted, for that merely stated that where, in the proceedings in the county court it appeared that the lands were embraced in more than one county "all further proceedings shall take place in the circuit court," showing that the original application must go to the county court and then be transferred to the circuit court where it appeared that the lands necessary to complete the drainage scheme were situated in two counties.

Section 34 of the new act, when read in the light of

the above quotation from section 1, clearly authorizes a petition to the circuit court for a change to the operation of the new statute. The language means that, whenever, at any stage of the proceedings, whether organizing a new district or changing an old one, in case the lands are situated in more than one county, the words "circuit court" shall be substituted in the statute for the words "county court."

We are, therefore, of the opinion that the proceedings are authorized by the statute in question and that the court was correct in proceeding to a hearing of the petition and in granting the prayer thereof.

A question which suggests itself in the case is whether or not original jurisdiction in the formation of improvement districts can be conferred upon circuit courts.

Counsel in the case have not raised this question, but, as before stated, it is one which suggests itself and can not be ignored.

This court, in the case of *Board of Directors of St. Francis Levee District* v. *Redditt,* 79 Ark. 154, held that the clause of the Constitution vesting jurisdiction in the county court "in every other case that may be necessary to the internal improvement and local concerns of the respective counties," is broad enough to embrace jurisdiction over condemnation proceedings for levee purposes, there being a statute authorizing such proceedings in the county court.

The question has given us a good deal of concern in the consideration of this case. But we are of the opinion that it is not controlled by the decision in the Redditt case, *supra,* for that case involved only the jurisdiction of the county court to condemn land for levee purposes. Conceding, as there held, that the jurisdiction of county courts over matters "necessary to the internal improvement and local concerns of the respective counties," draws to it the power to adjudicate a condemnation suit for levee purposes, yet it does not follow that the county courts have exclusive jurisdiction over the organization

of levee or drainage districts. If improvement districts of this character are to be treated as matters of "internal improvement and local concerns of the respective counties," within the meaning of the Constitution, they can not, as to lands situated in another county, be so treated, for the improvement of lands in one county can not be a matter of local concern in another county. Therefore, a district covering territory lying in more than one county is not local so as to confine the jurisdiction to the county court in effectuating an organization thereof. The circuit courts of the State being the repository of all unassigned jurisdiction, it is within the power of the Legislature to confer on them jurisdiction to determine questions relating to organization of districts not local to a county. We do not want to be understood as intimating even that the Legislature must limit proceedings for the organization of improvement districts to county courts, or to circuit courts, according to the facts with respect to the improvement being made, whether local to one county or more general in their scope; but, on the contrary, we recognize the force of some of our decisions holding that the Legislature can create special tribunals as agencies for the organization of improvement districts. For instance, the city council is by statute constituted the agency through which improvement districts in cities and towns are organized, and other districts have been formed by special act of the Legislature and special boards created for the purpose of effectuating the organization. *Shibley* v. *Fort Smith & Van Buren District,* 96 Ark. 410; *Board of Directors of Jefferson County Bridge District* v. *Collier,* 104 Ark. 425.

How far the line of distinction may be traced between that class of cases and this one we need not determine nor discuss further than to suggest the difference that, under the bridge statutes and the like, the special tribunals perform no judicial act, but merely act as canvassing boards to determine the will of the majority and ascertain the benefits and levy assessments; whereas the

drainage statute now under consideration confers judicial powers to decide other questions upon which the organization is made to depend.

The ruling in the Redditt case, *supra,* should not, we think, be interpreted to mean that the Legislature is powerless to create a district for construction of levees, or drains, or other improvements, except through orders of county courts, treating such improvements purely as matters of local concern within the exclusive jurisdiction of those courts. The scope of that decision must be confined to the single question involved therein. We are of the opinion, therefore, that the circuit court had jurisdiction and that the statute authorizes the order which was made.

The judgment is therefore affirmed.

SMITH, J., not participating.