OATES *v.* ROGERS.

4-6234 144 S. W. 2d 457

Opinion delivered November 11, 1940.

[black redacted bars]

*Rose, Loughborough, Dobyns & House* and *Edwin E. Dunaway,* for appellant.

*Pat Mehaffy* and *John E. Coates, Jr.,* for appellee.

GRIFFIN SMITH, C. J.  The question is whether an act of the general assembly separating the offices of sheriff and collector in counties falling within designated classifications and delegating to judges of the chancery, circuit, and county courts power to select the collector for a period of five years is compatible with article four of our constitution.[1]

Act 137, approved February 24, 1939, by its terms is applicable to counties having a population of 125,000 and an assessed valuation of real and personal property of $50,000,000 or more.

---

[1].Pertinent sections of the article in question are: (Sec. 1.) "The powers of the government of the state of Arkansas shall be divided into three distinct departments, each of them to be confined to a separate body of magistracy, to-wit:  Those which are legislative to one, those which are executive to another, and those which are judicial to another.  (Sec. 2.)  No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted."

As expressed in the act, "There is hereby created in all such counties a separate office of collector of taxes, and said officer shall be appointed by the judges of the circuit, chancery, and county courts of said counties. . . . Said collector, so appointed, shall serve for a term of five years, provided, however, that said collector shall be removed at any time by a majority vote of the aforementioned judges."

Asserting that if not restrained, William S. Rogers, county comptroller and purchasing agent, would incur certain expenses in preparing office quarters for the collector, whose tenure would begin January 1, 1941, appellant filed his complaint, alleging unconstitutionality of the act in question. This appeal is from action of the special chancellor in sustaining a demurrer. The prosecuting attorney concedes that the sole question is validity of act 137.

The constitution provides that the qualified electors of each county shall elect one sheriff, "who shall be *ex-officio* collector of taxes, unless otherwise provided by law." [2]

Clearly it was the intention of the general assembly, acting within the authority conferred by the constitution, to create the separate office of collector of taxes for Pulaski county, and the right so to do is absolute if the method employed is lawful.

Between adoption of the federal constitution by the convention of 1787 and ratification by eleven states in 1788, much was written regarding separation of the three governmental divisions; and principles so discussed, although not as aptly expressed as they subsequently were in state pronouncements, have, nevertheless, been construed to mean exactly what appellant here contends our constitution directs—that the functions *belonging* to one department cannot be usurped by the other, nor may the right to exercise such authority be delegated.

In *Springer* v. *Philippine Islands,* 277 U. S. 189, 48 S. Ct. 480, 72 L. Ed. 845, the court construed an act of the

[2] Constitution of 1874, art. VII, § 46.

Philippine legislature, which created a coal company and a bank, the stock of which was largely owned by the Philippine government. It was provided that power to vote the stock should vest in a "committee," in the one case, and in a "board of control" in the other, each consisting of the governor general, the president of the senate, and the speaker of the house of representatives. The court found that in the Philippine organic act, which divides the government into legislative, executive, and judicial departments, the principle is implicit, as it is in state and federal constitutions, that these three powers shall be forever separate and distinct from each other. It was held that voting of the stock in the election of directors and managing agents of the corporations was an executive function, and that the attempt to repose it in the legislative officers named in the acts violated the organic law. In the majority opinion, written by Mr. Justice SUTHERLAND, there is the following language:

"Thus the organic law [of the Philippines], following the rule established by the American constitutions, both state and federal, divides the government into three separate departments—the legislative, executive, and judicial. Some of our state constitutions expressly provide in one form or another that the legislative, executive, and judicial powers of the government shall be forever separate and distinct from each other. Other constitutions, including that of the United States, do not contain such an express provision. But it is implicit in all, as a conclusion logically following from the separation of the several departments. . . . And this separation and the consequent exclusive character of the powers conferred upon each of the three departments is basic and vital—not merely a matter of governmental mechanism. . . . Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions. . . . Not having the power of appointment, unless expressly granted or incidental to its powers, the legislature cannot engraft executive duties upon

a legislative office, since that would be to usurp the power of appointment by indirection. . . .''

In a dissenting opinion by Mr. Justice HOLMES, concurred in by Mr. Justice BRANDEIS, it was said: ''The great ordinances of the constitution do not establish and divide fields of black and white. Even the more specific of them are found to terminate in a penumbra shading gradually from one extreme to the other. . . . It does not seem to need argument to show that however we may disguise it by veiled words we do not and cannot carry out the distinction between legislative and executive action with mathematical precision and divide the branches into watertight compartments, were it ever so desirable to do so, which I am far from believing that it is, or that the constitution requires.''

It is impossible to harmonize the extreme views expressed by these eminent justices. It may be said, however, that Judge HOLMES was discussing the implication arising from distinct provisions of the federal constitution, and if we should concede the logic of his argument as applied to the facts upon which they were based, we must also consider what the difference might have been had there been direction through express language of the organic law to which he referred that no one of the three departments of government should exercise any power belonging to either of the other departments.

Perhaps the true construction is to be found in American Jurisprudence,[3] where it is said: ''A statute is not invalid as improperly conferring executive powers where the actual power of the executive department is not really diminished.'' The same thought was expressed by Madison in The Federalist, No. 48, when he said: ''It is agreed on all sides that the powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments. It is equally evident that none of them ought to possess, directly or indirectly, an overruling influence over the other, in the administration

[3] Vol. 11, p. 888, § 188, entitled, "Imposition of Executive Functions on Judiciary by Legislature," beginning on page 887.

of their respective powers. It will not be denied that power is of an encroaching nature, and that it ought to be effectively restrained from passing the limits assigned to it. After discriminating, therefore, in theory, the several classes of power, as they may in their nature be legislative, executive, or judiciary, the next and most difficult task is to provide some practical security for each, against the invasion of the others. What this security ought to be is the great problem to be solved." And, finally, there is this observation by Mr. Madison: "The conclusion which I am warranted in drawing from these observations is, that a mere demarcation on parchment of the constitutional limits of the several departments, is not a sufficient guard against those encroachments which lead to a tyrannical concentration of all the powers of government in the same hands."

In *O'Donoghue* v. *United States,* 289 U. S. 516, 53 S. Ct. 740, 77 L. Ed. 1356, Mr. Justice SUTHERLAND said: "The anxiety of the framers of the constitutions to preserve the independence especially of the judicial department is manifested by the provision now under review, forbidding the diminution of the compensation of the judges of courts exercising the judicial power of the United States. This requirement was foreshadowed, and its vital character attested, by the Declaration of Independence, which, among the injuries and usurpations recited against the King of Great Britain, declared that he had 'made judges dependent on his will alone, for the tenure of their offices, and the amount and payment of their salaries'."

An interesting opinion by the Nebraska Supreme Court—*Searle* v. *Yensen,* 118 Neb. 835, 226 N. W. 464, is printed and annotated in 69 A. L. R., p. 257. At page 261 there is this statement: "The power of the legislature to delegate a part of its legislative functions to municipal corporations or other governmental subdivisions, boards, commissions, and tribunals, to be exercised within their respective jurisdictions, cannot be denied; but the recipient[s] of such powers must be members of the same governmental department as that of the grantor.

Otherwise a confusion and duplication of powers would result. . . . The legislature may not impose upon the judiciary or the executive the performance of acts or duties not properly belonging to those departments respectively.''

In *City and County of Denver* v. *Lynch,* 92 Colo. 102, 18 Pac. 2d 907, copied and annotated in 86 A. L. R., p. 907, a constitutional provision similar to ours relating to separation of the three governmental departments was discussed. A headnote to the reprint in 86 A. L. R. is: ''Where those provisions of an old age pension law which are invalid as attempting to confer judicial powers on the board of county commissioners were apparently for the purpose of giving such board control over the administration of the act, and the elimination of such invalid provisions would leave the control in the hands of the county judge, the entire act must be held invalid.'' Another headnote is: ''Where a state constitution divides the powers of government into distinct departments, the legislature is powerless to confer judicial duties on nonjudicial officers.''

Consonant with this rule is that stated in 16 Corpus Juris Secundum, § 163a of Constitutional Law, pages 501-2.[4] (See the fourth footnote.)

Appellee relies upon *Falconer* v. *Shores,* 37 Ark. 386, and other opinions of this court, to support action of the special chancellor in sustaining the demurrer.

In the Falconer-Shores Case there is this statement: ''Doubtless the legislature has power to provide by

---

[4] "Generally, unless the constitution otherwise provides, the legislature may authorize courts or judges, in aid of or in connection with the exercise of their judicial powers, duties, and functions, to appoint officers, including those whose duties are not strictly judicial. Thus it has been held that courts may be authorized to appoint appraisers, commissioners to ascertain and settle the respective proportions of indebtedness assumed by the different parts of a divided county, commissioners or trustees to carry on the construction of a subsidized railway, election boards, judges, and clerks, county auditors, drainage commissioners, examining boards, expert witnesses, guards for the protection of property against mobs, janitors, jury commissioners, park commissioners, police commissioners, probation officers, receivers, road commissioners, school commissioners, tax collectors, equalizers, or adjustment boards, and water commissioners. Also, the power to authorize the court to appoint a clerk was not

law for collectors to be appointed by the governor, or in such other mode as may ·be directed.''

The point decided was not that the general assembly could delegate to judicial officers the power to appoint executive officers, but, rather, that the law-making body was authorized to provide by law for the collector to be appointed by the governor, ''or in such other mode as may be directed.'' The governor had appointed a collector to succeed the elected sheriff who had failed to file the necessary bond as *ex-officio* collector. The appointment was upheld, but the only question before the court was the right of the governor to appoint. The statement that the legislature might provide by law for the collector to be appointed ''in such other mode as may be directed'' must have reference to appointment by a mode not inconsistent with the constitutional provision restricting the spheres of authority in respect of the three departments of government. At most the expression could be no more than dictum.

In *Grassy Slough Drainage District* v. *The National Box Company*, 111 Ark. 144, 163 S. W. 512, jurisdiction of the circuit court to create drainage districts where the land lay in more than one county was sustained, the commissioners to be appointed by the court. It is insisted that by implication this was recognition of the legislature's power to delegate nonjudicial duties to the courts. Cases from other jurisdictions, and other authorities cited by appellee, are shown in the margin.[5]

denied, although such appointment was construed as an executive act; but where the office of clerk was an elective office under the constitution, the power to fill vacancies by appointment could not be conferred on the court. Furthermore, statutes have been sustained which have conferred on courts or judges authority to designate a judge to hold court. Thus courts of record in each county may be authorized to appoint one of their number to hear juvenile cases, or the chief justice of a superior court may be empowered to appoint a district judge to sit on the superior court for the trial and disposition of designated violations of criminal law, and the power of appointment and confirmation of federal judges vested in the president and senate is not usurped by a senior federal judge in assigning a district judge to another district, conformably to statute.''

[5] *Hoke* v. *Field*, 19 Amer. Rep. 58, 10 Bush 144, (Ky.) ; *Ross* v. *Board of Chosen Freeholders*, 69 N. J. L. 291, 55 Atl. 310; *New Jersey Zinc Co.* v. *Sussex County Board of Equalization of Taxes*, 70 N. J. L. 186, 56 Atl. 138; *Citizens Savings Bank* v. *Town of Greenburgh*,

Separation of powers was discussed in *State v. Hutt,* 2 Ark. 282. The question was whether Hutt, a justice of the peace whom the legislature had elected state treasurer, could hold the latter office. The proceeding was by *quo warranto.*[6] In the opinion, written by Judge Thomas J. Lacy, it was stated that the collection of taxes (a duty enjoined upon the treasurer) was an executive function, and that it was incompatible with that of justice of the peace. There is this expression: "The office of justice of the peace is as much a judicial office as the office of supreme judge, or circuit judge, for its power and being are derived from the same source, and stand precisely upon the same constitutional provision or enactment. . . . The office of justice of the peace belongs exclusively to the judicial [department] and that of treasurer of the state to the executive department; and this being the case, the constitution forbids, in express terms, any person or collection of persons from exercising the powers and duties of these two offices at one and the same time."[7]

It is not suggested that the exact question involved here was presented in the Hutt Case.

Right of the legislature to impose certain ministerial duties upon the county court was sustained in *State v. Collins,* 19 Ark. 587, decided in 1858, the constitution of 1836 then being in effect. By an act of 1855 the county courts of Crawford and Sebastian counties were directed to examine the accounts and settlements of the county

---

173 N. Y. 215, 65 N. E. 978; *McDonald* v. *Morrow,* 119 N. C. 666, 26 S. E. 132; *People* v. *Evans,* 247 Ill. 547, 93 N. E. 388; *Terre Haute* v. *Evansville & T. H. R. Co.,* 149 Ind. 174, 46 N. E. 77, 37 L. R. A. 189; *Ford* v. *Incorporated Town of North Des Moines,* 80 Ia. 626, 45 N. W. 1031; *In re Dexter-Greenfield Drainage District,* 21 N. Mex. 286, 154 Pac. 382; *Elliott* v. *McCrea,* 23 Idaho 524, 130 Pac. 785 (1913).

[6] It is of historical interest to note that Albert Pike was Supreme Court Reporter when this case was decided September 11, 1840. The name "Pike" for the state, appears in the report. Albert Pike was associated with J. J. Clendennin in the practice of law in 1837, when the latter was elected prosecuting attorney for the Little Rock district. He thereby became, ex-officio, attorney for the state. Clendennin later became a member of the Supreme Court, as did Albert Pike. Pike succeeded H. F. Fairchild June 8, 1864.

[7] When this case was decided the constitution of 1836 was in force. Article 3 of that document contained a provision exactly like §§ 1 and 2 of art. 4 of the constitution of 1874.

clerk, treasurer, sheriff and collector, and the internal improvement commissioners. Other related duties were imposed. Collins was indicted for violating the act. In reversing the trial court's action in sustaining a demurrer to the indictment, the opinion said: "The legislature had the undoubted right to impose the duties, required by the act, upon the officers named. What they are required to do, under the act, is simply ministerial, and by no means inconsistent with, or repugnant to the judicial functions, belonging to them under the constitution."

Duties of a county judge, primarily, are ministerial. As was said in *Nixon v. Allen,* 150 Ark. 244, 234 S. W. 45, "The county judge is the *governor,* so to speak, in the affairs of the county."

In this view of the status of county judges, the legislature has the undoubted right to add new ministerial duties, and the fact that this may be done supplies no basis for the argument that the same character of duties may be imposed upon the judge of a court whose duties are exclusively judicial; and this is certainly true where the function it is sought to delegate is of a class conferred upon the executive department by the constitution.

By an act of 1840, the presiding judge of the county court was authorized to appoint a sheriff, *pro tempore,* when the office of sheriff and coroner were both vacant. It was upheld in *State, Use of Brown et al. v. Crow et al.,* 20 Ark. 209. Here, again, the officer to whom the authority was delegated was charged with ministerial duties, and there was no violation of the constitution.

The Collins Case was cited in *Clayton v. Johnson,* 36 Ark. 406, 38 Am. Rep. 40, where the court said: "The legislature may authorize a judge to do a ministerial act in no way inconsistent with, or repugnant to, his judicial function under the constitution."

In the Clayton-Johnson Case a statute required an assignee for the benefit of creditors to file the assignment, and his inventory and bond, with the probate clerk, the bond to be approved by the probate court. The statute was challenged on the ground that approval of

the bond was executive in nature and could not be performed by the probate court. In the opinion it was said: "The approval of such a bond is a ministerial act, which, like the taking of the acknowledgments of deeds, might be entrusted to any officer, at the pleasure of the legislature." *Oliver, Sheriff* v. *Martin, Judge,* 36 Ark. 134, was cited. There it was held that a statute requiring circuit courts to approve bonds of all county officers was valid.[8]

We need not speculate what the situation would have been if the general assembly had named a collector, or had undertaken to delegate this authority to a person or group of persons not of the judiciary. *Cox* v. *State,* 72 Ark. 94, 78 S. W. 756, 105 Am. St. Rep. 17, is authority for the proposition that the governor has no inherent power by virtue of his office or of art. 6, § 23, to appoint certain commissioners, and that the legislature has power to make appointments to office unless its powers in that respect are restricted by the constitution, either expressly or by implication.

Article 7, § 46, of the constitution, provides the primary method of selecting a sheriff,[9] and that method is by action of the electors of each county. But the sheriff is not *collector* after the legislature has exercised the right to separate the two offices. In the instant case there can be no vacancy in Pulaski county unless we assume that the lawmaking body would have passed the bill even though it had known that the circuit and chancery judges were incompetent to name the collector.

The duties of a collector are in no sense related to the administration of justice; and, while certain activities not essentially judicial may be imposed upon judges in those cases where by the constitution such

[8] For views expressed in other jurisdictions see Supervisors of Election, 114 Mass. 247, 19 Am. Rep. 341; *State, ex rel. White* v. *Baker,* 116 Ia. 96, 89 N. W. 204, 57 L. R. A. 244, 93 Am. St. Rep. 222; *State, ex rel. Thompson* v. *Neble,* 82 Neb. 267, 117 N. W. 723, 19 L. R. A., U. S., 578; *State* v. *Mayor of Town of Dover,* 68 N. J. L. 576, 53 Atl. 214; *Beasley* v. *Ridout,* 94 Md. 641, 52 Atl. 61; *Prince George's County Commissioners* v. *Mitchell,* 97 Md. 330, 55 Atl. 673; *State, ex rel. Young* v. *Brill,* 100 Minn. 499, 111 N. W. 294, 639, 10 Ann. Cas. 425. See, also, 12 C. J. p. 874, § 377.

[9] This has no reference to a vacancy.

duties do not inhere in another department of the government, in the instant case the delegated authority is of that class set aside to the executive department.

In most instances judges are—and in all cases they should be—free from political pressure and beyond the reach of partisan influence.

Section 4 of act 137 provides a salary of $5,000 per year for the collector. He is authorized to employ a chief deputy at $175 per month and ten deputies at $140 per month, each—an annual expenditure of $23,900. Human nature is such that seekers for the position of collector will not only endeavor to importune the judges, but those aspiring to deputyships may likewise become suppliants.

Common knowledge teaches, and experience informs us, that most people who apply for public office have the backing of influential friends, and are themselves prominently connected. Unfortunately we have not reached that ideal state where friend interested in friend will circumscribe his or her activity merely because the appointive power is judicial.

Judges should not be subjected to these experiences. Our system, providing as it does for distinct separation of departments, did not in its inception contemplate a blending of authority; and overlapping must not be permitted now at the command of expediency or in response to the nod of convenience.

It is obvious that the motive actuating the legislature was to guarantee selection of a collector by a nonpolitical method. The judges to whom the mandate is directed are men of integrity to whom the implication of acting in the interest of political purpose would not attach. They had nothing to do with enactment of the measure, and would prefer to avoid its consequences.

Section 46 of art. 7, as it affects sheriffs, has been construed to provide for a two-year term of office.[10] By

[10] "The qualified electors of each county shall elect one sheriff, who shall be ex-officio collector of taxes unless otherwise provided by law; one assessor, one coroner, one treasurer, who shall be ex-officio treasurer of the common school fund of the county, and one county surveyor, for the term of two years, with such duties as are now or may be prescribed by law."

reference to the section (printed as the tenth footnote) it will be seen that the expression "for the term of two years" follows words which confer upon the general assembly power to create the separate office of collector. It must be held, therefore, that the collector's term could be for but two years, as distinguished from the five-year period stated in act 137.

Since the constitution limits a sheriff's term to two years, and by clear implication that limitation attaches to the office of collector; since the nature of the act of appointment is essentially non-judicial, and therefore not to be exercised by circuit and chancery judges; since purpose to separate the offices, delegation of authority to appoint, and the period for which appointment is made, are contained in sections one and two (and without these provisions the act is unworkable), it must be held that § 11—the severability clause—is impotent, and the entire act fails. Effect is that the sheriff remains, *ex officio,* collector.

The judgment is reversed and the cause is remanded with directions to overrule the demurrer and to enter an order not inconsistent with this opinion.