The Honorable Jerry E. Hinshaw State Representative 18804 Wheeler Road Springdale, Arkansas 72764
Dear Representative Hinshaw:
This is in response to your request for an opinion concerning the constitutionality of House Bill 1181. You have also asked, in the event we find the bill unconstitutional, to suggest what changes could be made to make it constitutional. You note that the sole effect of the bill is to bring the constitutional departments of the state, and the Legislative Council and the Joint Auditing Committee under the "Arkansas Purchasing Law", A.C.A. § 19-11-201et seq.
For the reasons that follow, it is my opinion that the bill is constitutionally suspect. We should note, however, that we have analyzed the constitutionality of the bill on its face, and not as applied to any particular facts. The constitutional questions presented must be determined with the particular facts of each case. Walker v. Washington, 263 Ark. 317, 564 S.W.2d 513 at 321.
The effect of the bill is to make the constitutional departments of state subject to the "Arkansas Purchasing Law". The bill removes language in this act which defines "exempt agencies". The law presently defines "exempt agencies" as "the constitutional departments of state including the Legislative Council and the Legislative Joint Auditing Committee". A.C.A. § 19-11-203 (13). It also defines the term "state agency" so as to exclude exempt agencies. A.C.A. § 19-11-203 (25). The new bill deletes any reference in the act to exempt agencies. The enactment of House Bill 1181 would render no agencies exempt from the law, and would presumably cover the seven constitutional state executive officers, (Governor, Lieutenant Governor,
Secretary of State, Attorney General, State Treasurer, State Auditor, and Commissioner of State Lands), the Legislative Department and its subordinate divisions, the state Judicial Branch and its subordinate departments and committees, the Game and Fish Commission, the Arkansas Highway Commission, and all other departments or establishments of state government which have heretofore been exempt from the law. Each of these categories will have to be analyzed separately in light of their respective duties and constitutional status in state government.
The "Arkansas Purchasing Law" creates the Office of State Purchasing ("OSP") to be administered by the State Purchasing Director, both subject to the supervision of the Director of the Department of Finance and Administration. A.C.A. § 19-11-215. The act provides that the State Purchasing Director shall serve as the "principal procurement officer of the state", (A.C.A. §19-11-217(a)), and gives him the power, among other powers,[1] to "procure or supervise the procurement of all commodities and services for each state agency. . . ." Some state agencies, however, are given authority to have their own in-house "agency purchasing official", and can make purchases without going through the Office of State Purchasing. These agencies include the Highway Department, most of the universities, colleges, and community colleges, and the Department of Correction.[2]
A primary aspect of the act is to set out competitive bidding requirements, see e.g. §§ 19-11-228, 19-11-229, 19-11-230, and 19-11-234, and to generally set out procedures for the procurement of all types of commodities and services unless they are exempted by the act. Exempt commodities and services include, for example, advertising in newspapers, contracts for the construction of building and major repairs, maintenance on office machines, livestock, and professional and consultant service contracts. A.C.A. § 19-11-203 (14). "Commodities" also does not include leases on real property or any permanent interest in real property. § 19-11-203(5).
The new bill would require that the constitutional departments of state make their purchases through the Office of State Purchasing. The act provides that the State Purchasing Director shall maintain a close and cooperative relationship with the using agencies, and shall afford each agency the opportunity to participate in and make recommendations with respect to matters affecting the using agency. A.C.A. § 19-11-226. Commodities and services are procured after an agency submits a "purchase request" to the Office of State Purchasing, who will then procure the commodity or service.
Section 19-11-215n, however, appears to grant plenary authority over purchasing to the OSP, at least for agencies which do not have their own "agency purchasing official".
This note refers to what was Section 17 of Act 482 of 1979, the act enacting the Arkansas Purchasing Law, wherein it states:
 Centralization of Procurement Authority. All rights; powers, duties, and authority relating to the procurement of commodities and services, and the management, control, warehousing, sale and disposal of commodities and services now vested in or exercised by any State Agency which does not have an Agency Purchasing Official, under the several statutes relating hereto, and regardless of source of funding, are hereby transferred to the Office of State Purchasing, except as otherwise provided herein.
The primary constitutional issue triggered by the new bill is the "separation of powers doctrine". Other constitutional issues may arise under specific language of the Arkansas Constitution regarding individual constitutional departments, such as the Game and Fish Commission. The separation of powers doctrine is found at Art. 4, §§ 1 and 2 of the Arkansas Constitution, and provides that:
 The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.
 No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.
This office has previously discussed this doctrine at length in Opinion Nos. 81-70 and 82-132,[3] copies of which are enclosed. These opinions include a general background and history of the doctrine, and thus we will not belabor that topic here. It is sufficient to note here that Arkansas has an express embodiment of the doctrine; in many states the doctrine is merely implied. In some states this fact has lead to a "strict construction" of the doctrine. See e.g. Legislative ResearchCommission v. Brown, 664 S.W.2d 907 (Ky. 1984), (construing language identical to Art. 4, §§ 1 and 2). Additionally, we have heretofore opined that:
 A natural incident of an explicit separation of powers has been to require a more marked separation of powers with no allowance for overlaps or encroachments of one branch over another.
Arkansas Attorney General Opinion No. 81-70 at 4.
Arkansas cases discussing the doctrine include Chaffin v.Arkansas Game and Fish Commission, 296 Ark. 431, 757 S.W.2d 950
(1988); ("review and advice" of legislative council unconstitutional); Federal Express Corp. v. Skelton,265 Ark. 187, 578 S.W.2d 1 (1979); Rockefeller v. Hogue, 244 Ark. 1029,429 S.W.2d 85 (1968); Farris v. Arkansas State Game FishCommission, 228 Ark. 776, 310 S.W.2d 231 (1958); Oates v.Rogers, 201 Ark. 335, 144 S.W.2d 437 (1940), and Hawkins v. TheGovernor, 1 Ark. 570 (1837).
It appears that by transferring to the Office of State Purchasing the power to obtain the commodities and services which the constitutional offices need to carry out their duties, the legislature has authorized the Office of State Purchasing to exercise powers which would otherwise be exercised by constitutional officers.[4] The argument is that the OSP will now be exercising powers which should be exercised by other departments of government. "No person . . . being one of these departments, shall exercise any power belonging to . . . the others", except as permitted by the constitution. Art. 4, § 2.
An analysis of this issue as to each category of constitutional departments follows.
 THE SEVEN EXECUTIVE CONSTITUTIONAL OFFICERS
The first question is determining whether House Bill 1181 creates a separation of powers violation as to these executive officers is to determine whether in fact the bill gives one branch of government the authority to exercise power belonging to another. In this instance, the bill proposes to give an executive
office, the OSP, the authority to purchase commodities and services for other executive constitutional officers. The OSP is created by the legislature, but serves under the supervision of the Director of DFA, who serves at the pleasure of the Governor. A.C.A. § 25-8-101. The Governor, and the six other state constitutional officers are made executive officers by express language of the constitution. See Amendment 56, § 1. So in this instance, the exercise of power is by one department of the executive branch over other establishments of the executive branch. Does this create a "separation of powers" problem?
The issue arises because it is the legislature which has created the OSP and defined and prescribed its powers and duties, although the OSP may operate under the supervision of other executive officials. If House Bill 1181 is enacted, the legislature will have attempted to give another executive agency the power to purchase commodities and services for the executive constitutional officers. The question presented is whether this violates the constitution. At least some courts have held that the legislature is without authority to vest constitutional functions of constitutional officers in other departments or officers. See e.g. Beck v. Game and Fresh Water FishCommission, 160 Fla. 1, 133 So.2d 594, (1948) and State ex el.Public Utilities Commission of Ohio v. Controlling Board ofOhio, 130 Ohio St. 127, 197 N.E. 129 (1935). See also, 16 C.J.S. Constitutional Law, § 134 at 434-435.
We are persuaded that a constitutional problem is triggered by the bill's provisions. Surely the legislature could not create an executive body and invest it with the entire constitutional power of one of the state constitutional officers, thereby obliterating the functions of that officer. The difference between this extreme example and the question before us is a matter of degree.
We will thus assume that a separation of powers analysis is implicated and will now apply that analysis to the facts of this case.
In Chaffin v. Arkansas Game and Fish Commission, supra, the Arkansas Supreme Court held that the Legislative Council's practice of giving "review and advice" on professional and consultant services contracts of executive agencies was unconstitutional under the separation of powers doctrine. The court cited a Colorado case which prohibited the reservation of "close supervision" over executive functions by the legislature. The court stated that:
 An unconstitutional encroachment may not always take the form of outright invasion. A subtle coercion exercised by a powerful branch of government can effectively tie the hands of a coordinate branch. The executive authority should be free, not only from blatant usurpation of its powers, but from paralyzing interference as well. The legislature cannot hold the executive branch hostage to its will. While it can and should hold hearings and investigate at length the performance of state agencies, it cannot intrude on the perogatives of the executive branch of government.
296 Ark. at 444.
A thoughtful discussion of the doctrine was undertaken in another Arkansas case, Oates v. Rogers, supra, where the court notes in discussing the separation of powers doctrine that:
 Perhaps the true construction is to be found in American Jurisprudence, where it is said: `A statute is not invalid as improperly conferring executive powers where the actual power of the executive department is not really diminished.'
201 Ark. at 339.
The court also cited Madison in The Federalist as saying that none of the departments "ought to possess, directly or indirectly, an overruling influence over the other, in the administration of their respective powers." 201 Ark. at 339-340.
Arkansas case law is sparse on the question of encroachment of executive powers. Other jurisdictions have adopted more specific tests. Many of these jurisdictions require that the interference be "significant", or that one department not be given "veto power" over another, or be accorded a "coercive influence", or interfere with staffing or resource allocation decisions, or interfere with "constitutional power".
The Kansas Supreme Court in State ex rel. v. Bennett,219 Kan. 285, 547 P.2d 786 (1976) held that a significant interference with the operations of another department must take place before there is a usurpation of power. The court considered several factors to determine whether an unconstitutional usurpation exists, including the essential nature of the power being exercised, whether the power is exclusively executive, the degree of control by the legislature, the nature of the objective sought to be attained, and the practical result of the exercise of the power. 219 Kan. at 290-291.
In this instance, the purchase of commodities and services with appropriated funds, in my opinion, is a purely executive function. See e.g. Arizona Opinion of the Attorney General No. 87-107 and Chaffin, supra. Although this power is not set out in the constitution as a power of the state executive constitutional officers, it is inherently necessary to carry out the functions of each office. It is also my opinion that the degree of control retained by the legislature itself may be small, but the degree given to another executive agency, (the OSP) is arguably substantial. The Purchasing Law sets out certain procedures which must be complied with in the purchase of goods and services. It does, however, give the OSP the authority to make purchases on behalf of other agencies. While this authority may not be the equivalent of the "veto power" struck down inChaffin, the application of House Bill 1181 to these constitutional officers would result in a wholesale transfer of their power to purchase goods and services to the Office of State Purchasing.
The objectives of the legislature in passing this law are stated at A.C.A. § 19-11-202 and include the purposes of simplifying, clarifying, and modernizing the law of procurement, providing for increased public confidence in procurement procedures, providing for fair and equitable treatment of persons who deal with the procurement system, providing increased economy in state procurement through fostering competition, and providing safeguards for the maintenance of a procurement system of quality and integrity. These objectives are legitimate, and in my opinion do not evince an attempt by the legislature to exercise superiority over the executive. It is my opinion, however, that they may not be achieved at the expense of the constitutional powers of executive officers.
It is my opinion that as a general matter, the application of the purchasing law to these officers may operate to diminish their executive authority to make the purchases necessary to perform their constitutional functions.[5]
For example, this office has previously opined that the OSP has the authority to order an executive agency without an "agency purchasing official" to pay monies on a disputed contract, once it has been entered into. See Opinion No. 90-247. We are not certain that as to constitutional entities, the OSP could be invested with this authority. Thus, it is foreseeable that in some instances, the law would impermissibly interfere with executive perogative. See Chaffin, supra.
In short, it is my opinion that as a general matter, the encroachment on these officers, or the "interference" which will result from the passage of House Bill 1181 is probably "significant" enough to constitute an unconstitutional separation of powers violation. This is especially true in light of the express separation of powers doctrine in the Arkansas Constitution, and the arguably strict construction which is to be applied under it.
 JUDICIAL BRANCH
The legislature, if it enacts House Bill 1181, will be giving the OSP, an executive agency, power to make purchases for the judicial branch. One department of government will be exercising the power of another. The state judicial branch, (the Supreme Court, Court of Appeals, Judicial Department, and Supreme Court Committees, etc.) has the inherent authority to make purchases it needs to carry out its duties. This power or authority is given by House Bill 1181 to the OSP. The question is whether this encroachment on the judicial branch is of the type significant enough to constitute an unconstitutional separation of powers problem. In my opinion, as a general matter, it is.
The analysis of the degree of the encroachment on the judicial branch is similar to that undertaken above with respect to the executive officers. The judicial branch makes purchases of commodities and services as an incident to exercising its core judicial function, which is primarily the adjudication of legal disputes. The application of House Bill 1181 to the judicial branch, however, transfers all rights, powers, duties and authority over procurement to the executive branch. The power of the judicial branch is, in my opinion, diminished by giving the OSP the power to make its purchases. See, Informal Opinion of the Alaska Attorney General, No. J-66-593-79.
 ARKANSAS HIGHWAY COMMISSION
The Arkansas Highway Commission was created by Amendment 42 to the Arkansas Constitution, Section § 1 of which provides:
 There is hereby created a State Highway Commission which shall be vested with all the powers and duties now or hereafter imposed by law for the administration of the State Highway Department, together with all powers necessary or proper to enable the Commission or any of its officers or employees to carry out fully and effectively the regulations and laws relating to the State Highway Department.
The Commission "administers" the State Highway Department, which has the power to "let all contracts for the construction, improvement, and maintenance of the roads comprising the state highway system. . . ." A.C.A. § 27-65-107. It has been held that the Highway Commission is an "executive department of government". Parkin Printing Stationary Co. v. ArkansasPrinting Lithograph Co., 234 Ark. 697, 354 S.W.2d 560 (1962).
The Highway Department is given its own "agency purchasing official" under the provisions of the Arkansas Purchasing Law. Additionally, the term "exempt commodities and services" is defined in the act as excluding "[c]ontracts awarded by the Arkansas State Highway and Transportation Department for the construction, reconstruction, and maintenance of roads and bridges in the state highway system. . . ." A.C.A. §19-11-203(14)(F). The definition of "capital improvements" in the act also excludes construction of roads and bridges or any facility or improvement constructed by or on behalf of the Highway Department or Highway Commission. A.C.A. § 19-11-203(3).
Thus, the only purchases required to be made through the OSP if House Bill 1181 is enacted would be those which might be made by the Commission itself, for items which are not related to the construction of facilities, or the letting of contracts for road or bridge construction. With regard to those purchases, it is my opinion that the bill would encroach upon the exercise of the Commission's executive perogative, and is thus, as with the other constitutional offices, suspect.
 ARKANSAS STATE GAME AND FISH COMMISSION
The Game and Fish Commission was created by Amendment 35 to the Arkansas Constitution. It is vested with broad powers to regulate wildlife in the state. Section 8 of this Amendment in part provides that:
 Said Commission shall have the power to acquire by purchase, gifts, eminent domain, or otherwise, all property necessary, useful or convenient for the use of the Commission in the exercise of any of its duties . . .
We have previously opined, in partial reliance on this provision, that the Game and Fish Commission cannot be made subject to the "General Accounting and Budgetary Procedures Law of Arkansas". A.C.A. § 19-4-101 et seq. See Opinion No. 89-098, a copy of which in enclosed. Footnote 2 of that Opinion notes that the opinion does not involve a question of whether the Commission is subject to the Purchasing Law, and notes that the parties agreed in a Chancery Court decree in Chaffin that the Commission was exempt from that law by its own language. We also noted in that opinion that a potential violation of the separation of powers doctrine existed, but did not need to address it because the attempted exercise of power violated the more specific provisions of Amendment 35. See Opinion No. 89-098, note 5.
Again, the result is the same with respect to the state purchasing law. The Game and Fish Commission has specific authority set out in Amendment 35 to "purchase . . . all property necessary, useful or convenient for the use of the Commission in the exercise of any of its duties . . .". Arkansas Constitution, Amendment 35, § 8. Any attempt by the legislature to take away this authority, or give it to another branch of government would violate Amendment 35. A distinct separation of powers analysis is not necessary.[6] Application of House Bill 1181 to the Game and Fish Commission, in my opinion, constitutes a violation of Amendment 35.
 THE LEGISLATURE, LEGISLATIVE COUNCIL AND JOINT AUDITING COMMITTEE.
It is difficult to conclude that a separation of powers problem exists when the legislature gives an executive department authority to make purchases for the legislature. To the extent the executive branch is exercising any power of the legislature, the legislature has authorized it. The separation of powers doctrine, however, does not seem to leave room for a consideration of whether the exercise of the power of another department is consensual; it merely states that no person being one of the departments shall exercise any power of the others. We are unsure as to whether a power such as this could, consistent with the separation of powers doctrine, be transferred consensually to another department of government. There appear to be no cases discussing this point.
It is my opinion that because House Bill 1181 attempts to transfer the wholesale power to make purchases for the legislative branch to the executive branch, the separation of powers doctrine is at least implicated, and may prohibit the application of the bill to the legislative branch. Again, therefore, the bill may be constitutionally suspect as applied to this branch.
 CONCLUSION
The application of the purchasing law to the foregoing executive constitutional offices and the judicial branch would, in my opinion, constitute a significant encroachment on their powers. This analysis applies with the equal force to the legislative branch, although the application of the bill in that instance would be consensual. It is not clear, however, whether this fact would alleviate a separation of powers problem.
Finally, you have asked us, in the event we find the bill unconstitutional, to recommend ways to make the bill constitutional. We would suggest that any proposed legislation meet the requirements set out by applicable case law, i.e. that it must not "really diminish" the power of the constitutional office or agency, or authorize an "overruling influence", (seeOates v. Rogers, supra), or "intrude on the perogatives" of these offices. (Chaffin, supra.)
Sincerely,
WINSTON BRYANT Attorney General
WB:arb
[1] The State Purchasing Director also has the power to make rules and regulations consistent with the Purchasing Law.
[2] The Purchasing Law also gives the Director the authority to, by regulation, authorize other agencies to have "agency purchasing officials". A.C.A. § 19-11-220 (a).
[3] Opinion No. 81-70 concluded that the Classification and Compensation Section of the Office of Personnel Management could not be transferred to the Bureau of Legislative Research. Opinion No. 82-132 concluded that the legislature could not retain the authority to approve the expenditure of appropriated funds by the Secretary of State for the maintenance of the State Capitol.
[4] We do not address the question of whether the Arkansas Purchasing Law violates the separation of powers doctrine as to non-constitutional agencies which are currently subject to it, as it is not necessarily implicated by your request.
[5] It should be noted that the powers of all of these executive officers are not expressly set out by the constitution. Article 6, § 22 provides that the Treasurer, Secretary of State, Auditor of State, and Attorney General shall perform such duties as may be prescribed by law. Other officers are given only a fraction of their powers by the constitution itself. The powers of these officers are in large part granted by the legislature. This fact, should not, however, render these officers any more subject to the control of the legislature in the context of a separation of powers analysis. The Kentucky Supreme Court inLegislative Research Commission, v. Brown, 664 S.W.2d 907 (Ky. 1984) discussed this argument and concluded that to accept it would be tantamount to eliminating the separation of powers doctrine. 664 S.W.2d at 913.
[6] Although we have undertaken a distinct separation of powers analysis with regard to the other constitutional offices, we would note that this purchasing power is arguably inherent in the other offices. A court might, therefore conclude that the requirements of House Bill 1181 on their face impermissilby infringe upon constitutional powers.